[No. F020987. Fifth Dist., Nov. 10, 1994.]

ANDREW RODRIGUEZ, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, FLORY
INDUSTRIES et al., Respondents.

COUNSEL

Robert S. Louis for Petitioner.

McMurchie, Foley, Brandenburger, Weill & Lenahan, Gerald M. Lenahan and Gregory H. Fowers for Respondents.

OPINION

**ARDAIZ, P. J.**—This case involves an interpretation of section 5402 of the Labor Code. Section 5401 of the Labor Code provides that an injured

employee who seeks workers' compensation benefits shall file with the employer a completed claim form advising the employer of the employee's name and address, Social Security number, time of the injury and address where the injury occurred, the nature of the injury and the part of the body affected by the injury. Section 5402 states in relevant part: "If liability is not rejected within 90 days after the date the claim form is filed under Section 5401, the injury shall be presumed compensable under this division. The presumption is rebuttable only by evidence discovered subsequent to the 90-day period." We are here concerned with what an employer must do in order for liability to be "rejected" within the meaning of section 5402. We conclude that rejecting liability is not the same thing as notifying the employee of the rejection, and that the statute requires only the former to occur within the 90-day period in order for the employer to avoid the presumption of compensability.

## FACTS AND PROCEDURAL HISTORY

Petitioner Andrew Rodriguez was employed as a fabricator by respondent Flory Industries (Flory). His job required him to lift pieces of steel. The last day he actually worked at Flory was December 9, 1992, a Wednesday. On the morning of December 10, 1992, he called Flory at about 6:45 a.m. and told Norma Taylor, an accounts payable clerk, he was ill and would not be coming in. Four days later on Sunday, December 14, he visited Stanislaus Medical Center and complained of pain in his neck and left shoulder. Triage Nurse Patty Miligan wrote a report stating that petitioner "c/o pain in neck and L shoulder x 2 yrs. getting worse." She also made the notation "LWOB." She said this meant "left without being seen."

Three days later on Wednesday, December 17, petitioner was seen at Flory by Rod Flory, a production manager and part owner of the business. Petitioner had his arm in a sling. According to Rod Flory, he asked petitioner about the sling and whether petitioner had incurred a workers' compensation injury. Petitioner replied: "I don't know. It might have happened at home, I have been pruning trees."

Karlene Boyt was a bookkeeper and payroll clerk for Flory. On December 23, 1992, she received a telephone call from Stanislaus Medical Center. The caller wanted to know who Flory's workers' compensation carrier was. Boyt asked the caller what employee the inquiry pertained to and was told it pertained to petitioner. Boyt told the caller that petitioner had not notified Flory previously, and asked the caller to tell petitioner to come over and fill out a claim form, known as a "DWC 1." That same afternoon petitioner came to Flory and filled out the claim form. Petitioner wrote on the claim

form that he had suffered an injury to his left shoulder and neck on December 11, 1992.

On or about February 11, 1993, petitioner filed with respondent Workers' Compensation Appeals Board (the WCAB or the board) an application for adjudication of claim. The application contained a verified claim that petitioner had sustained injury to his "neck, back, and shoulders" on December 9, 1992, while working as a fabricator at Flory and "lifting material (steel)."

On March 29, 1993, a Monday and the 96th day following petitioner's December 23, 1992, submission of his completed "DWC 1" claim form to Flory, petitioner's attorney received a written notification from Flory's insurer (respondent Hartford Insurance Company, hereinafter Hartford) that his claim "is denied because based our [sic] initial investigation we have determined to deny your alleged injury." This notice was dated March 22, 1993, and was mailed from Hartford's office in Sacramento, California, to the office of petitioner's attorney in Modesto, California.[1] Petitioner, Flory, and Hartford agree that March 22, 1993, was the 89th day following petitioner's December 23, 1992, filing of his "DWC 1" claim form with Flory.

On April 7, 1993, petitioner gave a deposition.

On April 23, 1993, a conference was held preceding the hearing on petitioner's application for adjudication. Petitioner's attorney pointed out he would be contending that the Labor Code section 5402 presumption of compensability should apply to the board's adjudication of petitioner's claim for benefits.

The hearing on petitioner's claim for benefits was held on September 27, 1993, a Monday. Petitioner did not appear personally but was represented by his attorney. According to petitioner's attorney, petitioner had been in his attorney's office on the previous Friday and had indicated he would be attending the hearing. Petitioner could not be located in the board building on Monday morning, and the hearing proceeded without him. The workers' compensation judge rejected petitioner's contention that the Labor Code section 5402 presumption should apply.

Five witnesses testified at the hearing. All were defense witnesses. Four of them were Patty Miligan, Norma Taylor, Rod Flory and Karlene Boyt, whose respective testimonies were described above. The fifth defense witness was Kent Flory. Kent Flory had been employed at Flory for 15 years.

---

[1]See footnote 2, *post*.

He was petitioner's supervisor and a son of one of the owners of the business. He testified he worked the same shift as petitioner in December of 1992 and that petitioner made no mention to him on December 9, 1992, of having injured himself in any way.

The transcript of petitioner's April 7 deposition testimony was also entered into evidence at the hearing. Petitioner's deposition testimony differed in several respects from the testimony offered by the defense witnesses at the September 23 hearing. Petitioner stated he had told Kent Flory on December 9 that he (petitioner) had hurt himself that day. He said that when he called in on the morning of December 10, he told the woman who answered the phone he was not coming in "because of my neck." He said he had not filled out the information on the "DWC 1" claim form on December 23, but had only signed the form on the signature line. First he said that Karlene had filled out the form. Later he said someone other than himself had filled out the form, that he did not know for sure who had actually filled out the form and he simply assumed it had been filled out by Karlene. He denied having any recollection of the December 17 conversation with Rod Flory that Rod Flory testified about, but did recall at some point he did visit Flory Industries while his arm was in a sling. There was no testimony by anyone at the September 23 hearing or by petitioner at his April 7 deposition about the purpose for this particular visit. Petitioner also testified he had worked at Flory on a prior occasion, that he quit going to work there after about five months, that he had then applied for unemployment benefits and he had falsely stated on his application for unemployment benefits he had been laid off. Petitioner also testified at his deposition that he did not remember ever having had an on-the-job injury when he was previously employed by the Stanislaus School District. This was impeached at the September 23 hearing by the introduction into evidence of a doctor's report from May of 1990 discussing an injury petitioner had allegedly suffered to his back and right shoulder while petitioner was closing a school gate during his employment as a custodian for the school district.

The workers' compensation judge ruled petitioner "has not sustained an industrial injury as alleged to his left shoulder, neck and back on 12/9/92."

Petitioner then petitioned the board for reconsideration of the workers' compensation judge's ruling.[2] On or about November 5, 1993, the judge issued a "Report and Recommendation on Petition for Reconsideration"

---

[2]The written opposition of Flory and Hartford to petitioner's petition for reconsideration pointed out for the first time that the March 22, 1993, letter had been postmarked March 26. The opposition stated: "Defendants feel an obligation to inform the Appeals Board that through their investigation they have discovered that it appears that the benefit notice

which recommended to the board that the petition for reconsideration be denied. The report reasoned as follows: "Applicant's attorney's contention is that the denial notice from defendant addressed in Labor Code § 5402 must be received by applicant or applicant's representative within 90 days. This WCJ disagreed indicating that the fact that defendants had objected by letter dated within the 90 days that this was sufficient for a proper denial pursuant to Labor Code § 5402."

On December 16, 1993, the board did deny petitioner's petition for reconsideration. Its order denying reconsideration stated in relevant part: "We have considered the allegations of the Petition for Reconsideration and the contents of the report of the workers' compensation judge (WCJ) with respect thereto. Based on our review of the record, and for the reaons stated in said report which we adopt and incorporate, we will deny reconsideration."

Petitioner then petitioned this court for a writ of review. (Lab. Code, § 5950.) We granted review.

## PETITIONER'S CONTENTIONS

Petitioner contends the board erred in concluding that liability was rejected by petitioner's employer within 90 days after petitioner's December 23, 1992, filing of his claim with Flory. He also contends that because his claim was not rejected within 90 days, the court should have admitted only evidence discovered subsequent to the 90-day period, and that all of the evidence admitted against him was discovered prior to the expiration of the 90-day period and should have been excluded.

## I.

## THE STANDARD OF REVIEW

Our scope of review is governed by Labor Code section 5952.[3] ▉ This court recently described our standard of review of an order,

rejecting liability for applicant's claim was not postmarked by the post office until 3/26/93. Defendant has no way of knowing where the apparent delay occurred." The attorney for Flory and Hartford also represented in oral argument to this court that the letter dated March 22 did not leave Hartford's office until after the 90th day.

[3]Labor Code section 5952 states: "The review by the court shall not be extended further than to determine, based upon the entire record which shall be certified by the appeals board, whether: [¶] (a) The appeals board acted without or in excess of its powers. [¶] (b) The order,

decision, or award of the WCAB as follows: "This court must determine whether the evidence, when viewed in light of the entire record, supports the award of the WCAB. This court may not reweigh the evidence or decide disputed questions of fact. [Citations.] However, this court is not bound to accept the WCAB's factual findings if determined to be unreasonable, illogical, improbable or inequitable when viewed in light of the overall statutory scheme. [Citation.] Questions of statutory interpretation are, of course, for this court to decide. [Citations.]" (*Western Growers Ins. Co.* v. *Workers' Comp. Appeals Bd.* (1993) 16 Cal.App.4th 227, 233-234 [20 Cal.Rptr.2d 26].)

We now turn our attention to the meaning of Labor Code section 5402.

## II.

### LABOR CODE SECTION 5402

Section 5402 of the Labor Code states in full: "Knowledge of an injury, obtained from any source, on the part of an employer, his or her managing agent, superintendent, foreman, or other person in authority, or knowledge of the assertion of a claim of injury sufficient to afford opportunity to the employer to make an investigation into the facts, is equivalent to service under Section 5400. If liability is not rejected within 90 days after the date the claim form is filed under Section 5401, the injury shall be presumed compensable under this division. The presumption is rebuttable only by evidence discovered subsequent to the 90-day period." Petitioner contends that in order for an employer to avoid the presumption of compensability called for by the statute, the employee must receive a notice of rejection of his claim within 90 days after his claim form has been filed with the employer. We disagree.

We begin with the fundamental rule that a "court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citation.]" (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) In determining such intent, "[t]he court turns first to the

decision, or award was procured by fraud. [¶] (c) The order, decision, or award was unreasonable. [¶] (d) The order, decision or award was not supported by substantial evidence. [¶] (e) If findings of fact are made, such findings of fact support the order, decision, or award under review.

"Nothing in this section shall permit the court to hold a trial de novo, to take evidence, or to exercise its independent judgment on the evidence."

Petitioner contends, without further elaboration, that the board's purported misinterpretation of Labor Code section 5402 and its conclusion that the presumption of compensability described in section 5402 does not apply are violations of subdivisions (a), (c) and (d) of Labor Code section 5952.

words themselves for the answer." (*People* v. *Knowles* (1950) 35 Cal.2d 175, 182 [217 P.2d 1].) We are required to give effect to statutes "according to the usual, ordinary import of the language employed in framing them." (*In re Alpine* (1928) 203 Cal. 731, 737 [265 P. 947, 58 A.L.R. 1500].) "[A] construction making some words surplusage is to be avoided [citation]." (*Watkins* v. *Real Estate Commissioner* (1960) 182 Cal.App.2d 397, 400 [6 Cal.Rptr. 191].) "When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear." (*Johnstone* v. *Richardson* (1951) 103 Cal.App.2d 41, 46 [229 P.2d 9].) With these principles in mind, we turn to the statute.

We think the Legislature is well aware of the distinction between the rejection of a claim and the giving of notice to the claimant that there has been such a rejection. The rejection is the decision by the person or entity to whom the claim has been filed or submitted that the claim will not be honored. Such a rejection does not require any participation on the part of the claimant after the claimant has filed or submitted the claim. Perhaps the best illustration of this distinction is found in the statutes governing claims for damages filed with public entities. A person seeking money damages from a public entity must file a claim with that entity. (Gov. Code, §§ 905, 910.) The public entity may in an appropriate instance "reject" the claim. (Gov. Code, § 912.6, subd. (a)(1).) The public entity is also required by statute to give the claimant "written notice" of the entity's rejection of the claim. (Gov. Code, § 913.) Although the governing body of the public entity must generally "act on" the claim within 45 days after the claim has been presented (Gov. Code, § 912.4, subd. (a)), the claim may be rejected within 45 days, even if the notice of rejection is not sent to or received by the claimant until after the 45 days has passed. "No time limit is prescribed within which the public entity must give the notice, but the claimant is permitted six months from the date that the notice is given to file suit." (Cal. Law Revision Com. com., 32 West's Ann. Gov. Code (1980 ed.) § 945.6, p. 597.) See, e.g., *Edgington* v. *County of San Diego* (1981) 118 Cal.App.3d 39 [173 Cal.Rptr. 225], where the claimant's claim was rejected on January 25, 1978, and the written notice of that rejection was deposited in the mail on February 2, 1978. (*Id.* at p. 42.) Indeed, the language of Government Code section 913, the statute setting forth the required contents of a notice of rejection of a Government Code claim, clearly contemplates that the rejection of a claim may well take place prior to the date on which the notice of rejection is prepared. That statute requires the public entity to expressly tell the unsuccessful claimant the date upon which his claim was rejected.

We do not mean to suggest that an employer should refrain from notifying an employee/claimant of the rejection of liability on the employee's Labor

Code section 5401 claim until after the 90-day period has expired. By failing to notify an employee/claimant within the 90-day period, an employer may encounter difficulty demonstrating that a claim was not in fact rejected within the 90-day period. The wise practitioner will take steps to ensure that the employee/claimant has been notified of the rejection within the 90-day period. ██ ██ ██ Nevertheless, it is the rejection which must occur within the 90-day period, not the receipt of notice of that rejection.[4]

Petitioner also contends that even if Labor Code section 5402 does not require receipt of a notice of rejection within 90 days in order for the employer to avoid the presumption of compensability, that statute still requires that a notice of rejection be sent within 90 days. For the reason just discussed, that argument fails as well.

The board did not err in determining that petitioner's claim was rejected within the 90-day period. The fact that the letter was dated March 22 (the 89th day) was evidence that the rejection of petitioner's claim occurred on or prior to that date. Furthermore, the record before the board contained other unrebutted indications that petitioner's claim had been rejected within 90 days of the December 23, 1992, submittal of his claim to his employer. Petitioner's February 9, 1993, "Application for Adjudication of Claim" and his February 24, 1994, "Declaration of Readiness to Proceed" both indicated that his claim had been rejected. The former document was signed by both petitioner and his attorney, and stated "Defendants do not have evidence or information to support their claim for denial of Totally Temporary Disability benefits and medical benefits." The latter document included petitioner's attorney's declaration stating "Applicant's representative has contacted insurance carrier and they have denied the claim without providing any

---

[4] Flory and Hartford point out that the board's own view of the meaning of Labor Code section 5402 appears to comport with ours. In *McGoldrick* v. *Travelers Ins. Co.* (1994) SAC 174388, 22 Cal. Workers' Comp. Rptr. 119, the employer's insurer did not send any denial letter at all, but the employee was verbally notified by the employer's human resource manager that the employee's claim had been rejected. The board stated that the section 5402 presumption "is not applicable because the claimed injury was discussed at the . . . meeting between applicant and management, and at that time the claim of compensability was unequivocally rejected. There are no formal requirements for rejecting the injury under Labor Code section 5402 and in this case under these circumstances the claim was clearly rejected and that information conveyed to the applicant." (*McGoldrick* v. *Travelers Ins. Co., supra,* 22 Cal. Workers' Comp. Rptr. 119.) It has been held that a board panel decision reported in the California Workers' Compensation Reporter is a properly citable authority. (*Griffith* v. *Workers' Comp. Appeals Bd.* (1989) 209 Cal.App.3d 1260, fn. 2 at p. 1264 [257 Cal.Rptr. 813].) The contemporaneous administrative construction of a statute by an administrative agency charged with its enforcement and interpretation is entitled to great weight unless it is clearly erroneous or unauthorized. (*Industrial Indemnity Co.* v. *Workers' Comp. Appeals Bd.* (1985) 165 Cal.App.3d 633, 638 [211 Cal.Rptr. 683]; *Cannon* v. *Industrial Acc. Comm.* (1959) 53 Cal.2d 17, 22 [346 P.2d 1].)

evidence or information supporting their position." February 24th was the 63d day of the 90-day period.

The board's order denying reconsideration is affirmed.

Vartabedian, J., and Harris, J., concurred.