[No. B086372. Second Dist., Div. Three. Aug. 8, 1995.]

STATE COMPENSATION INSURANCE FUND, Petitioner, v. WORKERS' COMPENSATION APPEALS BOARD and SAM WELCHER, Respondents.

676

**COUNSEL**

Krimen, Klein, Da Silva, Daneri & Bloom and Don E. Clark for Petitioner.

Dennis J. O'Sullivan and David D. Robin for Respondents.

## OPINION

KLEIN, P. J.—A workers' compensation judge (WCJ), applying the rebuttable presumption of compensability provided in Labor Code section 5402,[1] barred evidence offered by defendant State Compensation Insurance Fund (SCIF) concerning its admitted noncompliance with the statute and determined that an applicant was 100 percent permanently disabled due to industrial injury. SCIF petitioned for reconsideration, and the Workers' Compensation Appeals Board (Board) denied reconsideration, upholding the WCJ. SCIF sought review in this court, contending that the WCJ had erred in finding applicant's injuries compensable in view of the extensive medical record demonstrating nonindustrial causation. Both the applicant and applicant's health care provider (Kaiser Permanente, The 4600 Group, referred to herein as Kaiser) answered the petition, contending that failure to apply Labor Code section 5402 in this instance would render the legislation, enacted as part of Legislature's effort in 1989 and 1990 to reform the workers' compensation system, meaningless. We agree, and affirm the determination of the Board.

### FACTS AND PROCEDURAL HISTORY

Applicant Sam Welcher, born June 25, 1930, worked from January 1965 to February 26, 1991, first as a truck driver and then a dispatcher, for defendant employer Cook & Cooley, insured by defendant SCIF. Applicant left the job because he was no longer able to work due to health problems, and in March 1991 underwent major aortic bypass surgery at Kaiser during which a kidney was removed and some toes were amputated. Applicant, suffering from renal failure, receives dialysis frequently, and the medical expenses in this case are large.[2] He filed his claim for workers' compensation benefits on August 30, 1991, alleging an industrial continuous trauma injury to his kidneys, right lower leg, to his internal system, to his heart and psyche, and that he had industrially caused hypertension as well.

SCIF did not deny liability in this case until January 2, 1992, almost four months after the date of knowledge of the injury, which constituted noncompliance with Labor Code section 5402.

---

[1]The statute provides as follows: "Knowledge of an injury, obtained from any source, on the part of an employer, his or her managing agent, superintendent, foreman, or other person in authority, or knowledge of the assertion of a claim of injury sufficient to afford opportunity to the employer to make an investigation into the facts, is equivalent to service under Section 5400. If liability is not rejected within 90 days after the date the claim form is filed under Section 5401, the injury shall be presumed compensable under this division. The presumption is rebuttable only by evidence discovered subsequent to the 90-day period."

[2]At trial, Kaiser submitted a lien claim of $277,902.17, not a final lien.

At trial, applicant testified that during his daily employment as a radio dispatcher, he was often awakened in the night by calls concerning gasoline deliveries. He was in effect always "on call." Applicant missed very little time from work until he became sick in February 1991. Applicant felt stress on the job caused his illness, but would have continued to work if his illness had not intervened. Applicant further testified that the hypertension was diagnosed when he was 55 years old, and that his doctor had advised him to stop smoking, but said nothing about alcohol consumption.

The WCJ issued findings and award, determining that applicant had sustained industrial injury to his kidneys, his right lower extremity, his internal system, and his heart, and had work-related hypertension, "for the period 1/65 to 2/26/91 (pursuant to Labor Code Section 5402)." The WCJ found that applicant was permanently and totally disabled, and that there was need for further medical treatment for the applicant's renal and hypertensive conditions.

In her opinion on decision, the WCJ discussed applicant's medical history in detail, relying on the report dated March 25, 1991, by Kaiser physician Mark Saroyan, M.D., and on Kaiser's medical records. (The records, designated exhibit 20, which were extensive, were admitted at trial after being subpoenaed by defendant SCIF. Dr. Saroyan's reporting was included.) The WCJ's summary included the following: "In 1980, the applicant became a radio dispatcher. At that same time he was diagnosed as having hypertension and high cholesterol. This hypertension was not under control since the applicant stopped taking his medicine. During the period of 1984 to 1986, applicant had various polyps and possible cancerous growth[s] of his vocal cords with subsequent operations [o]n 6/8/84, 5/85, 4/86. During this time the applicant was [a] 2-pack a day smoker and possible alcohol user. The record is very vague about applicant's use of alcohol. Thus by 4/89, the applicant was diagnosed with uncontrollable hypertension, gallstones, hiatal hernia and chest pains. As for the chest pains, it was determined that the applicant had a normal EKG and no cardiac problems. Also at that time, applicant's care was transferred to Kaiser HMO. Eventually by 1991, the applicant had a renal failure which eventually resulted in dialysis with subsequent complication of amputation of his right first and second toes. Subsequent to 1991, the applicant had a history of unidentified G.I. bleeding with severe vascular disease. At the present time, the applicant is on dialysis for his total renal or kidney failure."

The WCJ elaborated further. "Applicant had a renal vascular hypertension which is the narrowing of the arteries to the kidneys. The kidneys, to

compensate for the restricted flow of blood, produce[d] renin, a hormone which increase[d] blood pressure, hence renal vascular hypertension, as indicated by the Kaiser records. Thus, the applicant's hypertension was not a stress-related hypertension. This hypertension and the narrowing of arteries eventually [led] to . . . applicant's renal failure. A stress-related hypertension is a hereditary condition which is exacerbated by a person's diet, weight, smoking habits, alcohol use and other contributory factors. In this case, the applicant's smoking contributed to his vascular narrowing disease of his arteries to his kidneys. . . . [¶] Applicant had renal vascular hypertension as opposed to stress caused hypertension. This is the reason why the applicant's hypertension was uncontrollable by the usual medications, which did not benefit him at all. The proper treatment for renal vascular hypertension is aorta-bi-iliac bypass and/or aorta-left-renal bypass. . . . Thus, it is found that the renal vascular hypertension with eventual renal failure and dialysis and amputation of the applicant's toes is non-industrial."

Finally, the WCJ declared: "Now, comes the interesting part of the case . . . , the 90-day presumption applies. However, this presumption is rebut-t[ed] by evidence discovered subsequent to the 90-day period. The Labor Code is not clear as to what type of evidence, i.e., medical or testimonial evidence for the delay. In this case, defense attorney wanted to present the testimony of the adjuster Amanda Corral-Cortez as to why the objection was not timely served on the applicant and his attorney within the 90 days. The WCJ had ruled that the testimony was inadmissible since her name as a witness was not listed either on his 7/23/93 MSC Statement [(Mandatory Settlement Conference Statement)] and [sic] the 8/4/93 Settlement Conference Summary. Because of the operation of Labor Code Section 5402, it is found the applicant's injury is industrial under the 90 day rule."

SCIF petitioned for reconsideration, pointing out what it deemed the "inconsistent" findings made by the WCJ. The WCJ recommended denial of reconsideration in her report and recommendation to the Board, because SCIF had not denied the injury in timely fashion. "The primary purpose of this Labor Code Section was that the defendants expeditiously investigate all claims in a timely manner so that the applicant will not be held in limbo as to the compensability of his injury. Defendants admitted that their denial was not timely . . . ." As to barring the testimony of SCIF's claims adjuster, the

WCJ pointed out that by the time of the mandatory settlement conference "defendants had had approximately two years in which to investigate the applicant's claim," and discovery had closed on that date pursuant to Labor Code section 5502, subdivision (d)(3).[3]

The Board denied SCIF's petition for reconsideration without further discussion. SCIF filed a verified, timely petition for writ of review in this court on September 2, 1994, observing there had been no published appellate opinion on what Labor Code section 5402 means, what kind of presumption has been created, and most particularly, what kind of evidence effectively rebuts the presumption created by the statute. SCIF argued that all its medical reports constituted evidence which rebutted the presumption, but did not submit the reports upon which it relied with the writ petition. (They are included in the Board record, however, and have been part of our review.) Kaiser filed opposition to the issuance of a writ, contending there have been several Board panel opinions in recent years taking the position the only rebuttal evidence admissible to combat the presumption of section 5402, once noncompliance by the employer/carrier has been established, is evidence that was *not reasonably obtainable* within the 90-day period, and that these opinions had stated the dispositive rule in this case. This court issued a writ of review.

DISCUSSION

## I. *Statutory Intent*

■ "A fundamental rule of statutory construction is that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law." (*DuBois* v. *Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387 [20 Cal.Rptr.2d 523, 853 P.2d 978].) When the meaning of a statute is uncertain, resort may be had to the history of the legislation, including legislative and other reports, to resolve such ambiguities as exist. (*Id.* at p. 393.)

■ In the case of Labor Code section 5402, the 1989 amendment to the section was one result of attempts "by representatives of organized labor, management and the insurance industry following several years of negotiation intended to streamline and improve the workers' compensation benefit

---

[3]Labor Code section 5502 is a procedural statute, governing hearings and calendaring of workers' compensation matters, among other things. In pertinent part, subdivision (d)(3) provides "[d]iscovery shall close on the date of the mandatory settlement conference. Evidence not disclosed or obtained thereafter shall not be admissible unless the proponent of the evidence can demonstrate that it was not available or could not have been discovered by the exercise of due diligence prior to the settlement conference."

delivery system. . . ." (Enrolled Bill Rep., Assem. Bill No. 276 (Sept. 19, 1989) Dept. Industrial Relations, p. 4.) Its primary purpose, as the WCJ correctly stated, was to expedite the entire claims process in workers' compensation by limiting the time during which investigation by the employer of a claim by an injured worker could be undertaken—90 days—without being penalized for delay. The "penalty" provided for delay was that a rebuttable presumption of compensability would attach to the claim.

## II. *The Nature of the Presumption Created*

We consider what sort of "rebuttable presumption" the Legislature intended to create in Labor Code section 5402. "A presumption is an assumption of fact that the law *requires* to be made from another fact or group of facts found or otherwise established in the action. A presumption is not evidence." (Evid. Code, § 600, subd. (a), italics added.) "A presumption is either conclusive or rebuttable. Every rebuttable presumption is either (a) a presumption affecting the burden of producing evidence or (b) a presumption affecting the burden of proof." (Evid. Code, § 601.)

"A presumption affecting the burden of producing evidence requires the ultimate fact to be found from proof of the predicate facts in the absence of other evidence. If contrary evidence is introduced then the presumption has no further effect and the matter must be determined on the evidence presented. (Evid. Code, § 604.)" (*In re Heather B.* (1992) 9 Cal.App.4th 535, 561 [11 Cal.Rptr.2d 891].) A presumption affecting the burden of proof has a more substantial impact in determining the outcome of litigation. The effect of a presumption affecting the burden of proof is "to impose upon the party against whom it operates the burden of proof as to the nonexistence of the presumed fact." (Evid. Code, § 606.) ▆ While a presumption affecting the burden of producing evidence concerns only the particular litigation in which it applies, a presumption affecting the burden of proof "is established to implement some public policy other than to facilitate the particular action in which it applies. [Citations.]" (*In re Heather B., supra*, at p. 561; Evid. Code, § 605.)

▆ We have concluded that the rebuttable presumption of Labor Code section 5402 was intended to affect the burden of proof rather than the burden of producing evidence, because it was created by the Legislature to implement the public policy of expediting workers' compensation claims. As such, once the underlying facts have been established, its effect in workers' compensation litigation is to place upon the defendant employer/carrier the burden of proving the employee/applicant does not have a compensable

injury; in the absence of such proof, the consequences are adverse to the employer/carrier.

In this case, "the underlying facts" were that applicant had made a timely claim to which SCIF had not responded for approximately four months, instead of the ninety days permitted by the statute. The WCJ's ruling barring the testimony of the SCIF claims adjuster was highly significant, in that SCIF was thus unable to avoid the application of the presumption. SCIF then had to assume the burden of proof on the primary issue in the case, which was industrial causation. Resolution of this issue required medical evidence, usually presented through medical reports from examining, treating or evaluating doctors. At trial, SCIF did offer, and the WCJ admitted, the reports of four defense doctors, obtained after January 2, 1992, including those prepared on August 2, 1993, and August 4, 1993, by internist and cardiologist Richard Hyman, M.D., in which he diagnosed hypertension and atherosclerotic peripheral vascular disease and concluded that neither were work related. All of these reports, however, were offered without explanation as to why they had not been obtained during the 90-day investigation period allowed by Labor Code section 5402.

III. *What Constitutes Evidence Which Will Rebut the Presumption of Compensability*

Once the presumption has attached to a claim, at issue is what evidence may be admitted on behalf of the employer/carrier to rebut the presumption. Labor Code section 5402 states that the evidence be only that "discovered subsequent to the 90-day period." While there is as yet no appellate discussion of this issue, the Board has spoken to it in a number of panel decisions. We adhere to "the well-established principle that contemporaneous administrative construction of a statute by the agency charged with its enforcement and interpretation, while not necessarily controlling, is of great weight; and courts will not depart from such construction unless it is clearly erroneous or unauthorized." (*Industrial Indemnity Co.* v. *Workers' Comp. Appeals Board* (1985) 165 Cal.App.3d 633, 638 [211 Cal.Rptr. 683].)

In *Napier* v. *Royal Insurance Co.* (1992) SAC 174290, 20 Cal. Workers' Comp. Rptr. 124 (writ den.),[4] a Board panel rejected an extremely broad interpretation of Labor Code section 5402 which would have barred all further discovery once the presumption applied, but said: "While the

---

[4] A board panel decision reported in the California Workers' Compensation Reporter is regarded as a properly citable authority, particular on the issue of contemporaneous administrative construction of statutory language. (*Griffith* v. *Workers' Comp. Appeals Bd.* (1989) 209 Cal.App.3d 1260, 1264, fn. 2 [257 Cal.Rptr. 813].)

presumption of compensability will preclude the defendant from disputing its liability for injury with evidence which could have been obtained with the exercise of reasonable diligence within the initial 90 day period, defendant is not thereafter permanently prevented from seeking evidence on corollary and related issues." The conclusion that the Labor Code section 5402 presumption operates to bar the presentation of evidence which "could have been obtained with the exercise of reasonable diligence" was also reached by the Board in *Finess* v. *American Motorists Ins. Co.* (1992) SAC 173856, 20 Cal. Workers' Comp. Rptr. 303 and *Casey* v. *CIGNA* (1993) GRO 7572, 5718, 6593, 21 Cal. Workers' Comp. Rptr. 248. What constitutes "reasonable diligence" is being decided on a case-by-case basis.

The Board has also identified at least one area where the presumption does not operate as a bar against the admission of evidence which may rebut compensability of a claim. An applicant's testimony at a hearing may rebut the presumption, if the WCJ does not find the applicant credible on the issue of compensability; the Board has reasoned that such testimony could not reasonably have been discovered in the 90-day period. (*Davis* v. *Workers' Comp. Appeals Bd.* (1994) 59 Cal.Comp.Cases 1066.) Following the same reasoning, the testimony of other witnesses at trial or by deposition on behalf of the applicant may rebut the presumption. (*Witherell* v. *Workers' Comp. Appeals Bd.* (1994) 59 Cal.Comp.Cases 1128, writ den.; and see *Pinson* v. *Workers' Comp. Appeals Bd.* (1995) 60 Cal.Comp.Cases 141.)

None of these decisions assist SCIF in its contention that it should have been permitted to rebut the presumption with the evidence contained in its medical reports, or the evidence discussed by the WCJ which was contained in the records of lien claimant Kaiser, all of which could have reasonably been obtained in the 90-day period after August 30, 1991. In short, SCIF never established that it had exercised reasonable diligence in investigating this claim.

IV. *The WCJ's Labor Code Section 5502, Subdivision (d)(3), Ruling*

SCIF did offer the testimony of its claims adjuster Corral-Cortez at trial, although she had not been identified as a witness at the mandatory settlement conference or in the settlement conference statement. The WCJ ruled that this circumstance operated to exclude the evidence, pursuant to Labor Code section 5502, subdivision (d)(3). This statute, which was enacted in 1989 and has undergone amendment on several occasions since, was considered by the Board in *Zenith Insurance Co.* v. *Ramirez* (1992) 57 Cal.Comp.Cases 719. The Board (in bank) upheld and applied the mandatory settlement

procedure including the provision closing discovery to a number of cases, noting that it was established "to guarantee a productive dialogue leading, if not to expeditious resolution of the whole dispute, to thorough and accurate framing of the stipulations and issues for hearing." (*Id.* at p. 727.)

In *Rodriguez* v. *Workers' Comp. Appeals Bd.* (1994) 30 Cal.App.4th 1425, 1433 [35 Cal.Rptr.2d 713], the Court of Appeal held that pursuant to Labor Code section 5402, ". . . it is the *rejection* [of liability] which must occur within the 90-day period, not the receipt of notice of that rejection." (Italics added.) In view of *Rodriguez*, the WCJ's ruling excluding the adjuster's testimony was particularly significant, because the testimony would very likely have been relevant concerning whether SCIF had in fact rejected the claim within the 90-day period but had simply not communicated its decision to the claimant. The WCJ, in the case before us, defended her ruling on this issue in her report to the Board, pointing out no explanation had been given at trial why the adjuster's identity had not been disclosed at the mandatory settlement conference, and emphasizing there had been inexcusable delay in this case. We conclude that the type of delay demonstrated herein was of the sort that Labor Code section 5402 was designed to discourage. The Board correctly upheld the WCJ's ruling.

DISPOSITION

The Board's order dated July 21, 1994, denying reconsideration, is affirmed.

Croskey, J., and Aldrich, J., concurred.

Petitioner's application for review by the Supereme Court was denied November 2, 1995.