[No. G024467. Fourth Dist., Div. Three. Aug. 18, 1998.]

MELISSA WILLIAMS, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, CITY OF PISMO
BEACH et al., Respondents.

**COUNSEL**

Goldschmid, Silver & Spindel and Lawrence Silver for Petitioner.

William A. Herreras and Merle Rabine for California Applicants' Attorneys Association as Amicus Curiae on behalf of Petitioner.

G. Bruce Sutherland for Respondents.

**OPINION**

**BEDSWORTH, J.**—In this appeal we interpret section 5402 of the Labor Code, which provides in pertinent part: "If liability is not rejected within 90

days after the date the claim form is filed under Section 5401, the injury shall be presumed compensable under this division. The presumption is rebuttable only by evidence discovered subsequent to the 90-day period."[1] We are concerned here with the effect of this statute on an employer who accepts an employee's claim and provides benefits within the initial 90-day period but later, after almost two years of providing benefits, denies liability. The workers' compensation judge (WCJ) applied the section 5402 presumption of compensability to respondent and excluded the testimony of its defense witnesses. The Workers' Compensation Appeals Board (WCAB) found that the presumption of a compensable injury did not apply because respondent initially accepted the claim and furnished benefits in "good faith." In our view the WCAB misinterpreted section 5402; we therefore annul the judgment.

I

Melissa Williams began her law enforcement career with the City of Long Beach in 1978. After 10 years on the force, she relocated to the Central Coast of California and secured employment with the City of Pismo Beach (City). During her first year she was promoted to sergeant and experienced no work-related problems.

In January of 1990, Brook McMahon was hired as the new chief of police. From the beginning of his tenure as chief, his attitude toward Williams was antagonistic, and Williams began to experience stress. She was appointed as his aide and delegated a heavy workload. He demanded excessive overtime, publicly ridiculed her and was verbally abusive. Her precarious emotional stability affected her marriage, and her husband complained of the unpaid overtime she put into her job. Both she and her husband had extramarital affairs. Ultimately, their marriage failed.

In March of 1992, Williams sought medical care from a general practitioner who placed her on a leave of absence. She never returned to work with the City. On March 6 she filed an employee's claim for workers' compensation benefits complaining of "depression and anxiety due to work conditions [and] treatment." At the City's request she was examined by Robert T. Grattan, M.D., who concluded she was "temporarily and totally disabled from her usual occupation by her depression." Grattan surmised her disability was at least 10 percent related to events arising from her employment with the City, and felt her psychiatric disability began on March 4, 1992. He opined that the conflicts between Williams and McMahon would have to be resolved in order for them to establish a suitable working relationship.

---

[1]All undesignated statutory references are to the Labor Code.

Grattan's psychiatric report was provided to the City on April 28, 1992, 53 days after Williams filed her claim for benefits. The City then provided Williams with full-salary benefits for about a year, after which the rate was reduced to a temporary total disability rate. After providing benefits for almost two years, the City rejected her claim because of "information which was discovered subsequent to the ninety day deadline and which will be presented at trial." In the interim the City filed an application for adjudication with the WCAB.

The litigants selected Thomas Preston, M.D., to conduct a psychiatric examination of Williams. In August of 1995, Preston evaluated her as "tearful and fearful" and suffering from "repetitive obsessional symptoms . . . including symptoms of getting into a car crash, shaving her legs to peel the skin off, etc. Although not suicidal, she fights such ideas." He described her judgment as "impaired by her ruminative thinking, depression and loss of self-confidence."

Preston interpreted the results of psychological tests he administered to Williams and assessed her as depressed and resentful, noting "life has probably become a great strain" for Williams. He described her as "functioning at a marginal level ever since discontinuing her employment" and found her to be "significantly symptomatic." Preston concluded Williams was "temporarily totally disabled from March 5, 1992, until she returned to wallpapering on a part-time basis at which point her condition was one of temporary partial psychiatric disability." He doubted whether she would ever be able to return to work as a police officer, because she lacked self-confidence and suffered from depression, anxiety, and fear.

Preston concluded Williams would not have become disabled "absent the interactions with Chief McMahon and the significant work overload. I believe it would be speculative to state she would have developed disability absent the stressful interactions and conflicts with her chief and the significant work overload which occurred." In his opinion, "work situations" were the predominant cause of her depression, but he may not have been presented with evidence of Williams's extramarital affair.

Williams relocated to Southern California and the case went to trial in Santa Monica over a two-year period, during which various City employees testified, including Police Chief McMahon. At the conclusion of trial the WCJ issued her findings and award, and opinion on decision. The WCJ found the City's "rejection more than 90 days after the date of injury and filing of the claim form did not negate the [Labor Code section] 5402 [p]resumption."

The WCJ explained: ". . . since the Applicant's claim was accepted after obtaining the opinion of a psychiatrist without doing any further investigation, the subsequent investigation and denial were not performed with due diligence. . . . All of the witnesses were available for interview within the 90 days, their names were known and they were employed by defendant." The WCJ found that Williams was temporarily disabled from March 5, 1992, onward and issued an award for temporary disability in Williams's favor.

The City filed a petition for reconsideration, which was granted by the WCAB. The WCAB described this as a case "where the defendant timely and in good faith conducted an initial investigation, accepted the applicant's claim of psychiatric injury, and paid benefits in good faith." The WCAB concluded that section 5402 does not apply to cases where the employer has timely furnished benefits but later discovers that liability is in question. The WCAB noted that even in the "pre-reform" era, initial acceptance of a claim did not equate with an admission of liability. The WCAB rescinded the WCJ's findings and award, found that section 5402 did not apply and the City's evidence was not excluded, and returned the matter for the litigants and the WCJ to determine whether there was an industrial injury in the absence of the presumption of compensability under section 5402. Williams then petitioned this court for review of the sole issue of the applicability of section 5402.

## II

Our review is governed by section 5952. "This court must determine whether the evidence, when viewed in light of the entire record, supports the award of the WCAB. This court may not reweigh the evidence or decide disputed questions of fact. [Citations.] However, this court is not bound to accept the WCAB's factual findings if determined to be unreasonable, illogical, improbable or inequitable when viewed in light of the overall statutory scheme. [Citation.] Questions of statutory interpretation are, of course, for this court to decide. [Citations.]" (*Western Growers Ins. Co.* v. *Workers' Comp. Appeals Bd.* (1993) 16 Cal.App.4th 227, 233-234 [20 Cal.Rptr.2d 26].)

With these guidelines in mind, we turn to section 5402.

Section 5402 provides: "[k]nowledge of an injury . . . on the part of an employer . . . or knowledge of the assertion of a claim of injury sufficient to afford opportunity to the employer to make an investigation into the facts, is equivalent to service under Section 5400. If liability is not rejected within 90 days after the date the claim form is filed . . . the injury shall be presumed

compensable under this division. The presumption is rebuttable only by evidence discovered subsequent to the 90-day period."

Our first inquiry must be whether the presumption applies under these facts. ■ "A fundamental rule of statutory construction is that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citations.]" (*DuBois* v. *Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387-388 [20 Cal.Rptr.2d 523, 853 P.2d 978].) When the statutory language is clear, courts "look no further and simply enforce the statute according to its terms. [Citations.]" (*Id.* at pp. 387-388.)

■ The statute plainly states *if* liability is not rejected within 90 days of the claim filing, then the injury *shall* be presumed compensable. On its face, any claim not rejected during the initial 90 days after filing is presumed to be compensable. There are no exceptions listed for claims accepted and paid but later denied. Because the statute applies here, where liability was not rejected during the first 90 days, we turn to the final phrase of section 5402.

The presumption of compensability is rebuttable only by evidence discovered subsequent to the 90-day period. *State Compensation Ins. Fund* v. *Workers' Comp. Appeals Bd.* (1995) 37 Cal.App.4th 675 [43 Cal.Rptr.2d 660] (*Welcher*) is one of the few published appellate decisions interpreting section 5402. In *Welcher* an employee suffering from numerous medical problems filed a claim for workers' compensation benefits. The employer failed to deny the claim until after 90 days. (37 Cal.App.4th at p. 678.) The Court of Appeal held that the section 5402 presumption applied and the employer failed to rebut the presumption because all of its evidence could reasonably have been obtained during the 90-day period. (37 Cal.App.4th at p. 684.)

Obviously the facts in *Welcher* differ from ours; in *Welcher* the employer never paid benefits on the claim. However, the court did discuss the type of evidence which can be used to rebut the presumption of compensability. Finding no published appellate decisions on this issue, the court reviewed WCAB panel decisions and concluded section 5402 operates to bar evidence which " 'could have been obtained with the exercise of reasonable diligence . . . .' " (*Welcher, supra,* 37 Cal.App.4th at p. 684.)[2]

The City concedes all of its trial witnesses were available during the 90-day time period but offers no satisfactory explanation as to why its

[2]This court may consider WCAB panel decisions according to the principle that "contemporaneous administrative construction of a statute by the agency charged with its enforcement and interpretation, while not necessarily controlling, is of great weight . . . . [Citations.]" (*Industrial Indemnity Co.* v. *Workers' Comp. Appeals Bd.* (1985) 165 Cal.App.3d 633, 638 [211 Cal.Rptr. 683].) Of note is *Applebee's Restaurant* v. *Workers' Comp. Appeals Bd.* (1998) 63 Cal.Comp.Cases 840 (writ den.). There the Court of Appeal, Sixth Appellate District, and

investigation was not undertaken in a more timely fashion. Accepting a claim and paying benefits does not permit employers to place the claim on the back burner. Contrary to the City's argument, the application of section 5402 in this situation does not penalize it for providing immediate benefits. Instead, it is penalized for failing to conduct its investigation of its own employees to resolve the claim within the 90-day period. Any other rule would penalize applicants. They would be forced to stand by for whatever time was convenient to the employer and perhaps be forced to put on a stale case through no fault their own.

We think our interpretation of section 5402 is in line with the purpose of the 1989 amendment to the statute, which was to " 'streamline and improve the workers' compensation benefit delivery system' " and to limit the time during which employers must investigate a claim by an injured worker—90 days—or be penalized for the delay by the rebuttable presumption. (*Welcher, supra,* 37 Cal.App.4th at pp. 681-682.) Here, the City had all the information it needed within 90 days after the claim filing to thoroughly investigate and, if appropriate, reject the claim.

The decision of the Worker's Compensation Appeals Board is annulled. The matter is remanded for further proceedings consistent with this opinion.

Sills, P. J., and Rylaarsdam, J., concurred.

Respondents' petition for review by the Supreme Court was denied December 1, 1999.

---

the WCAB let stand a decision of a WCJ excluding a defense medical examination report offered to rebut the section 5402 presumption where the employer initially accepted the injury and paid benefits, but later disputed the injury. The WCJ found injury based on the presumption of compensability of section 5402 because of the employer's failure to investigate and deny the claim within the 90-day period.