[No. B162142. Second Dist., Div. Eight. May 12, 2003.]

McGEE STREET PRODUCTIONS et al., Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD and GABRIELLE
PETERSON, Respondents.

718

**COUNSEL**

Graves, Roberson & Bourassa and Stephen D. Roberson for Petitioners.

Bagby, Gajdos & Zachary and George J. Gajdos for Respondent Gabrielle Peterson.

No appearance for Respondent Workers' Compensation Appeals Board.

**OPINION**

**RUBIN, J.**—We hold the Workers' Compensation Appeals Board (the Board) may not allow joinder of a new party after the expiration of the one-year statute of limitations for the filing of a serious and willful misconduct claim. (Lab. Code, § 5407.)[1] Accordingly, we annul the Board order in this case that permitted joinder.

---

[1]Labor Code section 5407 provides: "The period within which may be commenced proceedings for the collection of compensation on the ground of serious and willful misconduct of the employer, under provisions of Section 4553, is as follows: [¶] Twelve months from the date of injury. This period shall not be extended by payment of compensation, agreement therefor, or the filing of application for compensation benefits under other provisions of this division."

When a worker sustains a work-related injury due to the serious and willful misconduct of the employer, section 4553 provides: "The amount of compensation otherwise recoverable shall be increased one-half, together with costs and expenses not to exceed two hundred fifty dollars ($250) . . . ."

All further statutory references are to the Labor Code unless otherwise noted.

## FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts are undisputed. Kenneth Peterson (Peterson) suffered a fatal heart attack while working on a movie production in Arizona on February 17, 2000. Peterson was employed by both a general employer and a special employer. The general employer was Entertainment Partners (Entertainment), which handled payroll and regular workers' compensation benefits. The special employer was the production company, McGee Street Productions (McGee Street). Peterson's wife, Gabrielle, filed claims against Entertainment for a specific and a cumulative trauma injury on behalf of her husband, herself and their two dependent children. Entertainment settled those claims.[2]

On February 2, 2001, within one year of the date of death, Gabrielle Peterson then filed a second petition, this time alleging serious and willful misconduct against only Entertainment. The petition alleged Entertainment employed Peterson as a transportation captain. California and Arizona Occupational Safety and Health Administration regulations required medical personnel on the scene. The employer's production manager on site was aware that, because of a traffic collision three days prior to Peterson's death involving the vehicle used by the medical personnel, the assigned medical equipment and supplies were unavailable. Accordingly, Entertainment was not able to render effective emergency care to Peterson when he suffered his heart attack. The petition alleged that Entertainment knowingly failed to comply with safety standards.

McGee Street was served by mail with a copy of the petition but was not named as a defendant. On April 19, 2001, more than one year after Peterson's death, an amended petition naming both McGee Street and Entertainment was served on McGee Street. An order joining McGee Street Productions issued on December 10, 2001.

On December 18, 2001, the attorney for McGee Street's insurance carrier objected to the order of joinder because he had not received notice of the hearing on the serious and willful claim. McGee Street also contended that Entertainment, not McGee Street, was the responsible party. The objection also referenced Hallmark Entertainment (Hallmark), the first mention of that entity in a document filed in the workers' compensation proceedings.

Meanwhile in October 2001, Entertainment filed a petition to dismiss based on its status as a general employer not involved in daily control or

---

[2]Another entity, Cast and Crew Payroll, also settled and is not a party to this appeal.

supervision over Peterson's duties, workplace or activities. On January 14, 2002, the workers' compensation judge (WCJ) dismissed Entertainment following a settlement with the Peterson family. On January 18, 2002, Ms. Peterson filed and served a second amended serious and willful petition, including both McGee Street and Hallmark. Hallmark objected to the second amended petition, contending there was no employment relationship between it and Peterson.

A bifurcated trial was set for June 12, 2002, on the sole issue of whether the serious and willful petitions against McGee Street and Hallmark were barred by Labor Code section 5407 because they were filed more than one year from the date of death.

At trial, Ms. Peterson argued that she had timely served Entertainment and, because liability of general and special employers was joint and several, service of the petition on Entertainment constituted timely service on McGee Street. Ms. Peterson further contended that *Rubio v. Workers' Comp. Appeals Bd.* (1985) 165 Cal.App.3d 196 [211 Cal.Rptr. 461], supported a rule that amendments adding new parties relate back to the original petition. This rule, she argued, was consistent with the principle that dismissals based on pleading technicalities are disfavored. (See *Liberty Mutual Ins. Co. v. Workers' Comp. Appeals Bd.* (1980) 109 Cal.App.3d 148 [167 Cal.Rptr. 57].) She also argued that McGee Street had made misrepresentations in which it denied the existence of an employment relationship and should, therefore, be estopped from raising the statute of limitations defense. Ms. Peterson contended that previously McGee Street had denied employment, even though its attorneys were in possession of pleadings previously filed indicating the existence of either a general or special employment relationship. Not until April 16, 2002, in its opposition to joinder did McGee Street for the first time admit Entertainment was the general employer and McGee Street was the special employer. It was only then that McGee Street abandoned its "no employment relationship" defense in favor of the statute of limitations. If Hallmark and McGee Street had initially raised the statute of limitations defense, Ms. Peterson contended, she would not have agreed to dismiss Entertainment. "However, on the representation made by the attorney for Hallmark Entertainment/McGee Street Productions, specifically that their objection to the joinder was based on an employment relationship and relying upon the Affidavit of Ms. Kay Kimmel, attached to the . . . Petition to Dismiss, submitted by Entertainment Partners . . . [Peterson] agreed to a Dismissal . . . ."

McGee Street and Hallmark argued that neither was named as a defendant in the original petition for serious and willful misconduct. The first and

second amended petitions were filed more than one year from the date of death, and there was no authority permitting amendments to add new defendants after the time prescribed in the statute of limitations. Further, as in ordinary civil matters, an amendment that adds a new defendant does not relate back to the date of filing of the original complaint. McGee Street and Hallmark also contended Ms. Peterson was aware of her husband's dual employment situation and, citing *Martin v. Phillips Petroleum Co.* (1974) 42 Cal.App.3d 916 [117 Cal.Rptr. 269] (disapproved on other grounds in *Kowalski v. Shell Oil Co.* (1979) 23 Cal.3d 168, 177, fn. 9 [151 Cal.Rptr. 671, 588 P.2d 811]), a serious and willful claim must be filed against the special employer if it was the special employer who engaged in conduct giving rise to the claim. Finally, they claimed that denial of employment was only shorthand for their contention that they had no liability.

The WCJ found Peterson was unaware that McGee Street and Hallmark were employers at the time she filed the serious and willful petition. Based on *Rubio v. Workers' Comp. Appeals Bd., supra,* 165 Cal.App.3d at page 188, the WCJ found that a serious and willful petition may be amended to add a new defendant. The WCJ further concluded that McGee Street and Hallmark had been served with the original petition against Entertainment and could not demonstrate lack of timely warning or prejudice. The WCJ rejected McGee Street and Hallmark's arguments based on the statute of limitations in the Code of Civil Procedure as inapplicable to workers' compensation proceedings, governed exclusively by the Labor Code. The WCJ concluded that given the liberal construction of workers' compensation laws (see § 3202; *Fruehauf Corp. v. Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 569, 577 [68 Cal.Rptr. 164, 440 P.2d 236]), the statute of limitations did not bar the present claims against McGee Street or Hallmark.

McGee Street and Hallmark sought reconsideration. The Board denied the petition and adopted the WCJ's report as its decision. This petition for review followed.

## DISCUSSION

We first note that this is an issue of first impression. ██ Interpretation of governing statutes is decided de novo by the appellate court, even though the Board's construction is entitled to great weight unless clearly erroneous. (*Boehm & Associates v. Workers' Comp. Appeals Bd.* (1999) 76 Cal.App.4th 513, 515-516 [90 Cal.Rptr.2d 486]; *Williams v. Workers' Comp. Appeals Bd.* (1999) 74 Cal.App.4th 1260, 1264 [88 Cal.Rptr.2d 798]; *Ralphs Grocery Co. v. Workers' Comp. Appeals Bd.* (1995) 38 Cal.App.4th 820, 824 [45

Cal.Rptr.2d 197].) When interpreting a statute, the Legislature's intent must be determined and given effect. (*Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224]; *Williams v. Workers' Comp. Appeals Bd., supra,* at p. 1265.) The best indicator of legislative intent is the plain meaning of the statutory language, when clear and unambiguous. (*DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387-388 [20 Cal.Rptr.2d 523, 853 P.2d 978]; *Moyer v. Workmen's Comp. Appeals Bd., supra,* at p. 230; *Boehm & Associates v. Workers' Comp. Appeals Bd., supra,* at p. 516; *Williams v. Workers' Comp. Appeals Bd., supra,* at p. 1265.) Effect also should be given to the entire statute, thereby leaving no part or provision useless, deprived of meaning or contradictory. (*DuBois v. Workers' Comp. Appeals Bd., supra,* at p. 388; *Moyer v. Workmen's Comp. Appeals Bd., supra,* at p. 230.) The statute should be interpreted consistently with its intended purpose, and harmonized within the statutory framework as a whole. (*DuBois v. Workers' Comp. Appeals Bd., supra,* at p. 388; *Webb v. Workers' Comp. Appeals Bd.* (1980) 28 Cal.3d 621, 626 [170 Cal.Rptr. 32, 620 P.2d 618].) Section 3202 provides that statutes contained in divisions 4 and 5 of the Labor Code (which includes section 5407) "shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment."

Section 5407 provides that a claim for serious and willful misconduct must be filed within one year of the date of injury. It further states that time "shall not be extended by payment of compensation, agreement therefor, or the filing of application for compensation benefits under other provisions of this division." (*Ibid.*)

In *Lambreton v. Industrial Acc. Com.* (1956) 46 Cal.2d 498, 503 [297 P.2d 9], our Supreme Court held that the statute of limitations was not extended to assert a serious and willful claim by the injured worker's original application for regular benefits because a serious and willful claim was an entirely new and different cause of action. Nor is the time extended when an employee added a cumulative trauma claim to extend the date of injury. (*Caro v. Workers' Comp. Appeals Bd.* (1977) 42 Cal.Comp.Cases 332).[3]

In contrast, the court in *Rubio* rejected a statute of limitations defense to a serious and willful petition filed beyond one year when the original application for regular benefits also specified that one of the contested issues was

---

[3]Because writ for review was denied, *Caro* has no stare decisis effect; however, it is helpful to an understanding of the Board's construction of the statute. (See *Ralphs Grocery Co. v. Workers' Comp. Appeals Bd., supra,* 38 Cal.App.4th at p. 827, fn. 7.)

serious and willful misconduct. The court distinguished *Lambreton v. Industrial Acc. Com., supra,* 46 Cal.2d 498, because the correct cause of action was alleged. Amendment to describe the misconduct was permitted after the statute of limitations had expired because only explanatory facts underlying the serious and willful claim were added. The amendment did not name a new party.

The *Rubio* court reasoned " ' "[l]imitations provisions in the workmen's compensation law must be liberally construed in favor of the employee unless otherwise compelled by the language of the statute, and such enactments should not be interpreted in a manner which will result in" a loss of compensation.' [Citations.] Moreover, informality of pleading in proceedings before the Board is recognized and courts have repeatedly rejected pleading technicalities as grounds for depriving the Board of jurisdiction. [Citation.] [¶] . . . In workers' compensation proceedings, as in civil proceedings generally, [t]he statute of limitations will not bar amendment of an application where the original application was timely and the amendment does not present a different legal theory or set of facts constituting a separate cause of action."[4] (*Rubio v. Workers' Comp. Appeals Bd., supra,* 165 Cal.App.3d at p. 200, italics omitted.)

*Rubio* relied in part on *Blanchard v. Workers' Comp. Appeals Bd.* (1975) 53 Cal.App.3d 590 [126 Cal.Rptr. 187]. *Blanchard* interpreted the statute of limitations for reopening an award. "In civil cases it is the rule that the statute of limitations will not bar an amendment to the complaint so long as the amendment does not introduce a wholly different cause of action. . . . In a workers' compensation proceeding, in which much less formal rules of pleading are observed, the rules should be at least as liberal as in civil cases generally." (*Id.* at p. 595, citations omitted.)

Unlike the situation in *Rubio,* the amendment here involves new party defendants. Applying the analogy to civil cases suggested by *Rubio* and *Blanchard,* we refer to the familiar rule that under the Code of Civil Procedure, a complaint may not be amended to add a new defendant after the statute of limitations has run. (*Woo v. Superior Court* (1999) 75 Cal.App.4th 169, 175-178 [89 Cal.Rptr.2d 20]; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 1999) ¶ 6:733, at p. 6-146; 5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 1158, pp. 617-619.) The only exception to this rule is when the original complaint states a cause of

---

[4]Consistent with *Rubio,* the Board has permitted amendment to change the theory of the case when evidence supported the original and new theory, and there was no prejudice to the employer. (*La Deau Mfg. Co. v. Workers' Comp. Appeals Bd.* (1997) 62 Cal.Comp.Cases 522.)

action against a Doe defendant and the plaintiff is unaware of the true identity of that party at the inception of the suit. Upon ascertaining the true name of the Doe defendant, the plaintiff may amend the complaint even after the expiration of the statute of limitations. (Code Civ. Proc., § 474; *Woo v. Superior Court, supra,* 75 Cal.App.4th at pp. 175-178.)[5] The requirement of good faith ignorance of the true name of a fictitiously designated defendant set forth in Code of Civil Procedure section 474 is designed to promote the policies supporting the statute of limitations. (*Motor City Sales v. Superior Court* (1973) 31 Cal.App.3d 342 [107 Cal.Rptr. 280].)

Here the original complaint neither alleged serious and willful misconduct nor named McGee Street or Hallmark. First, as to the misconduct, we observe that the legal standard governing serious and willful pleading is stringent. "The term 'serious and willful misconduct' is described . . . as being something 'much more than mere negligence, or even gross or culpable negligence' and as involving 'conduct of a *quasi* criminal nature, the intentional doing of something either with the knowledge that it is likely to result in serious injury, or with a wanton and reckless disregard of its possible consequences' " (*Mercer-Fraser Co. v. Industrial Acc. Com.* (1953) 40 Cal.2d 102, 117 [251 P.2d 955]). In fact, workers' compensation insurance does not cover serious and willful misconduct. (Cal. Workers' Compensation Practice (Cont.Ed.Bar 4th ed. 2002) p. 994.) There is nothing in the original petition that hints at such misconduct.

As for the failure to expressly identify McGee Street and Hallmark, initially we recognize that application of the civil statute of limitations law to workers' compensation cases is not a perfect fit, as there are no Doe parties permitted in the latter. Of greater significance, at the time she filed the serious and willful misconduct petition, Ms. Peterson was not ignorant of the identity of the employer that exercised control over the details of her husband's work. This is borne out by the fact that she mailed a copy of the petition to McGee Street at the time of filing. There is no showing that her knowledge of Hallmark was any different. The second amended petition does not allege she discovered any new information, nor did Ms. Peterson explain why she could not have obtained the information earlier.

In sum, section 5407 compels filing a serious and willful action within one year of the date of injury. Absent evidence of true ignorance of the identity of the alleged employer, we see no justification to depart from the unambiguous and plain language of the statute. The policies of avoiding the

---

[5]We are aware the Code of Civil Procedure does not generally apply in workers' compensation (Lab. Code, § 5708, except where specified, e.g., *id.,* §§ 3707, 5710, 5902, 5954) but find in this instance, as did the court in *Blanchard,* the comparison instructive.

presentation of stale claims and of putting parties on notice of potential liability are not furthered by the rule suggested by respondents that naming a general employer in a petition ipse dixit permits the addition of a special employer after the running of the limitations period.

*Estoppel*

■ An employer and its insurer are estopped to plead the statute of limitations when the actions or misrepresentations of either induce the employee to refrain from filing a claim until after the statute of limitations has run. (*Benner v. Industrial Acc. Com.* (1945) 26 Cal.2d 346, 349 [159 P.2d 24]; *Industrial Indem. Co. v. Ind. Acc. Com.* (1953) 115 Cal.App.2d 684, 689 [252 P.2d 649].) To prove estoppel, the employee must show reliance on some act, omission, or statement of the employer or insurer. (*American Can Co. v. Indus. Acc. Com.* (1962) 204 Cal.App.2d 276, 278 [22 Cal.Rptr. 164].)

■ The only evidence adduced by Ms. Peterson in support of estoppel were written statements made by McGee Street and Hallmark denying employment after the statute of limitations had expired. On May 14, 2001, a representative of Gulf Insurance Group wrote counsel for Ms. Peterson two letters, identical except for a difference in claim number. Each letter captioned Hallmark Entertainment as "employer," but in the body of the letter, in underlined letters, stated that Peterson "was not employed by McGee Street Productions, Inc. at the time of injury. We show employer at the time was Entertainment Partners." Regardless of the legal correctness of the statement made by the insurance representative, these letters were sent nearly five months *after* the statute of limitations had expired. Nothing contained in those letters could have discouraged Peterson from filing a serious and willful claim prior to the February 16, 2001, expiration date.

As for the argument that but for these letters Peterson would never have dismissed Entertainment Partners with prejudice, that claim is both misleading and unpersuasive. It is misleading because the dismissal was part of a settlement by which Entertainment Partners paid $152,500, including attorney's fees of $22,500. Thus, Peterson did not "walk away" from Entertainment in anticipation of prevailing against McGee Street and Hallmark. Peterson's argument is unpersuasive because there is nothing in the record that suggests Peterson would have obtained a more favorable settlement or award from Entertainment Partners if the other parties had taken on a different litigation posture as to the identity of the employer(s).

In sum, the record is devoid of any attempt by McGee Street or Hallmark prior to the running of the statute of limitations to mislead Peterson or

misrepresent their status. There is nothing to suggest that anything McGee Street or Hallmark did or did not do caused Ms. Peterson to refrain from timely filing her serious and willful claim against them. Accordingly, her estoppel argument fails.

DISPOSITION

We annul the Board's order after reconsideration.

Cooper, P. J., and Boland, J., concurred.

A petition for a rehearing was denied June 9, 2003.