[No. B174785. Second Dist., Div. Two. Mar. 15, 2005.]

JOHN REA, as Acting Director, etc., Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, EREZ BOOSTAN et al., Respondents.

## Counsel

Vanessa Holton, Steven A. McGinty, Anthony Mischel and John J. Korbol for Petitioner.

Neil P. Sullivan and Vincent Bausano for Respondent Workers' Compensation Appeals Board.

No appearance for Respondents Erez Boostan and Daniel Milbauer.

## Opinion

**NOTT, J.**—The primary issue we decide in this case is that the Workers' Compensation Appeals Board overstepped its authority by implementing new procedures relative to proceedings involving the Uninsured Employers Fund.

### INTRODUCTION

Daniel Milbauer was injured on October 17, 1994, while performing his duties as a messenger and courier. Since the employer was illegally uninsured

for workers' compensation, Milbauer, through counsel, claimed benefits from petitioner John Rea, Acting Director of the Department of Industrial Relations, as administrator of the Uninsured Employers Fund.[1] On or about May 8, 2003, the workers' compensation administrative law judge (WCJ) issued a decision that Erez Boostan, an individual and doing business as American Runner Attorney Service, is the illegally uninsured employer, and awarded benefits. The Fund petitioned the respondent, Workers' Compensation Appeals Board (WCAB), for reconsideration and alleged that American Runner Attorney Service, Inc., is the correct illegally uninsured employer, and there is no jurisdiction or liability under section 3716, subdivision (d).[2]

In an in bank decision,[3] the WCAB concluded that substantial evidence supports the illegally uninsured employer's identity found by the WCJ, and affirmed the award. The WCAB further found that the Fund failed for over eight years to furnish benefits under section 3716, subdivision (b),[4] or information regarding the proper employer as required by section 3716,

---

[1] The Uninsured Employers Fund (now Uninsured Employers Benefits Trust Fund and hereafter Fund) was created to pay workers' compensation benefits in place of illegally uninsured employers, who may be subject to certain penalties and reimbursement. (*DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 388–389 [20 Cal.Rptr.2d 523, 853 P.2d 978] (*DuBois*); Lab. Code, § 3710 et seq.) The failure to secure insurance for payment of compensation may be an unfair business practice. (Lab. Code, § 90.3 et seq.)

All further references are to the Labor Code unless stated otherwise.

[2] Section 3716, subdivision (d) in relevant part provides: "The Uninsured Employers Benefits Trust Fund shall have no liability to pay compensation, nor shall it be joined in any appeals board proceeding, unless the employer alleged to be illegally uninsured shall first either have made a general appearance or have been served with the application specified in Section 3715 and with a special notice of lawsuit issued by the appeals board. The special notice of lawsuit shall be in a form to be prescribed by the appeals board, and it shall contain at least the information and warnings required by the Code of Civil Procedure to be contained in the summons issued in a civil action. The special notice of lawsuit shall also contain a notice that if the appeals board makes an award against the defendant that his or her house or other dwelling and other property may be taken to satisfy the award in a nonjudicial sale, with no exemptions from execution. The special notice of lawsuit shall, in addition, contain a notice that a lien may be imposed upon the defendant's property without further hearing and before the issuance of an award. The applicant shall identify a legal person or entity as the employer named in the special notice of lawsuit. The reasonable expense of serving the application and special notice of lawsuit, when incurred by the employee, shall be awarded as a cost. Proof of service of the special notice of lawsuit and application shall be filed with the appeals board. [¶] (1) The application and special notice of lawsuit may be served, within or without this state, in the manner provided for service of summons in the Code of Civil Procedure."

Section 3715 refers to an application for compensation (hereafter application).

[3] The WCAB's in bank decision, *Milbauer v. Erez Boostan, an individual and dba American Runner Attorney Service,* hereafter is referred to as *Milbauer I.*

[4] Section 3716, subdivision (b) states in relevant part: "It is the intent of the Legislature that the Uninsured Employers Benefits Trust Fund is created to ensure that workers who happen to be employed by illegally uninsured employers are not deprived of workers' compensation benefits . . . ."

subdivision (d)(4).[5] The WCAB announced and adopted procedures that, in the future, the Fund may be ordered to appear at priority conferences under section 5502,[6] and to assist with discovery of the proper employer. The WCAB explained that the illegally uninsured employer's disputed identity could be determined by litigation between the employee and the Fund, which would then allow for service of the application and special notice of lawsuit and the Fund's formal joinder. The WCAB also warned the Fund and its counsel that sanctions under section 5813[7] could be awarded for similar dilatory conduct.

The Fund petitioned the WCAB for reconsideration a second time, and challenged the new procedures adopted and announced by *Milbauer I* on various grounds. The WCAB in bank[8] dismissed the petition because the new procedures did not involve a final appealable order, or a substantial right or liability was not decided.[9] In addition, the WCAB contends that the new

---

[5] Section 3716, subdivision (d)(4) states: "The director, on behalf of the Uninsured Employers Benefits Trust Fund, shall furnish information as to the identities, legal capacities, and addresses of uninsured employers known to the director upon request of the board or upon a showing of good cause by the employee or the employee's representative. Good cause shall include a declaration by the employee's representative, filed under penalty of perjury, that the information is necessary to represent the employee in proceedings under this division."

[6] Section 5502, subdivision (c) states in relevant part: "The court administrator shall establish a priority conference calendar for cases in which the employee is represented by an attorney and the issues in dispute are employment or injury arising out of employment or in the course of employment. The conference shall be conducted by a workers' compensation administrative law judge within 30 days after the declaration of readiness to proceed. If the dispute cannot be resolved at the conference, a trial shall be set as expeditiously as possible, unless good cause is shown why discovery is not complete, in which case status conferences shall be held at regular intervals."

[7] Section 5813, subdivision (a) states: "The workers' compensation referee or appeals board may order a party, the party's attorney, or both, to pay any reasonable expenses, including attorney's fees and costs, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay. In addition, a workers' compensation referee or the appeals board, in its sole discretion, may order additional sanctions not to exceed two thousand five hundred dollars ($2,500) to be transmitted to the General Fund."

[8] *Milbauer v. Erez Boostan, an individual and dba American Runner Attorney Service* (dismissed); hereafter referred to as *Milbauer II*.

[9] See *Safeway Stores, Inc. v. Workers' Comp. Appeals Bd.* (1980) 104 Cal.App.3d 528, 534–535 [163 Cal.Rptr. 750] (*Safeway Stores*) (industrial injury is appealable "threshold" issue or substantive right or liability, which can be waived even if matter is remanded); see also *Maranian v. Workers' Comp. Appeals Bd.* (2000) 81 Cal.App.4th 1068, 1078 [97 Cal.Rptr.2d 418] (*Maranian*) (WCAB reversal of presumption of compensability under § 5402 is substantial issue basic to employee's entitlement to benefits, and final appealable order).

procedures applied to future cases and the Fund is not aggrieved within the meaning of sections 5900[10] and 5903.[11]

The Fund petitions for writ of review and argues that the new procedures in *Milbauer I* are final orders since WCAB in bank decisions are binding on WCJ's and WCAB panels.[12] The Fund further argues it is aggrieved because WCJ's are applying the new procedures statewide. The Fund also contends that the WCAB impermissibly legislated changes to jurisdictional requirements under sections 3716, subdivision (d) and 5502, subdivision (f),[13] which interfere with the ability of the Director of Industrial Relations to regulate workers' compensation insurance and seek reimbursement from uninsured employers. Moreover, the Fund claims *Milbauer I* violates the rulemaking requirements of the Administrative Procedure Act (APA),[14] *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 571 [59 Cal.Rptr.2d 186, 927 P.2d 296] (*Tidewater Marine*)[15] and section 5307.[16] Finally, the Fund argues that *Milbauer I* authorizes sanctions under section 5813 contrary to section 3716.2[17] and *DuBois*.[18]

---

[10] Section 5900, subdivision (a) states in part: "Any person aggrieved directly or indirectly by any final order, decision, or award made and filed by the appeals board or a workers' compensation judge under any provision contained in this division, may petition the appeals board for reconsideration . . . ."

[11] Section 5903 states in relevant part: "At any time within 20 days after the service of any final order, decision, or award made and filed by the appeals board or a workers' compensation judge granting or denying compensation, or arising out of or incidental thereto, any person aggrieved thereby may petition for reconsideration . . . ."

[12] See California Code of Regulations, title 8, section 10341; *Gee v. Workers' Comp. Appeals Bd.* (2002) 96 Cal.App.4th 1418, 1425, footnote 6 [118 Cal.Rptr.2d 105].

[13] Section 5502, subdivision (f) states: "In cases involving the Director of the Department of Industrial Relations in his or her capacity as administrator of the Uninsured Employers Fund, this section shall not apply unless proof of service, as specified in paragraph (1) of subdivision (d) of Section 3716 has been filed with the appeals board and provided to the Director of Industrial Relations, valid jurisdiction has been established over the employer, and the fund has been joined."

[14] See Government Code section 11340 et seq.

[15] In *Tidewater Marine*, the Supreme Court ruled that the Division of Labor Standards Enforcement written policy, applying Industrial Welfare Commission overtime wage standards to offshore employees, is general, interpretive, and a new procedural regulation which is void for noncompliance with the APA. (*Tidewater Marine, supra*, 14 Cal.4th at pp. 571–572.)

[16] Section 5307 states in relevant part: "(a) Except for those rules and regulations within the authority of the court administrator regarding trial level proceedings as defined in subdivision (c), the appeals board may by an order signed by four members: [¶] (1) Adopt reasonable and proper rules of practice and procedure. [¶] . . . [¶] (b) No rule or regulation of the appeals board pursuant to this section shall be adopted, amended, or rescinded without public hearings."

[17] Section 3716.2 states in relevant part: "The Uninsured Employers Fund shall not be liable for any penalties or for the payment of interest on any awards."

[18] In *DuBois*, the Supreme Court held that the Fund is not subject to paying increased compensation or penalty for unreasonable delay under section 5814, considering section 3716.2. (*Dubois, supra*, 5 Cal.4th 382.)

The WCAB answers that the new procedures under *Milbauer I* do not involve substantive rights or final appealable orders, and there is no authority that in bank decisions should be treated differently. If *Milbauer I* is considered a final decision, the WCAB argues further, then the Fund's petition for writ of review is untimely.[19] Alternatively, the procedures are prospective and the Fund is not newly aggrieved as required by sections 5900 and 5903. Although the WCAB now concedes the Fund may not be ordered to priority conferences under section 5502, the WCAB claims other procedural conferences are not prohibited. More importantly, the WCAB contends, the Fund has a duty to provide benefits and employer information under section 3716, the record shows the Fund failed to do so, and the new procedures, although reasonable, can be challenged in future cases. In addition, the APA expressly allows a precedent decision as an exception to rulemaking requirements,[20] and there are numerous in bank decisions that have announced general procedural rules as authorized under the Labor Code. Finally, penalties under section 5813 were not imposed, and are different than the penalties addressed by section 3716.2 and *DuBois*.

We conclude that the new procedures decided by *Milbauer I* involve substantial rights and liabilities, and the decision is a final appealable order. The WCAB in bank decided new procedures that change the jurisdictional and liability requirements under sections 3716 and 5502. In addition, because there was no prior notice of the new procedures until *Milbauer I* issued, the Fund is newly aggrieved and the second petition for reconsideration is proper. Thus, the petition for writ of review from *Milbauer II* is timely. Moreover, deciding different issues without giving the Fund the opportunity to be heard or present evidence violated due process.

■ Although there may be substantial evidence to support the WCAB's finding in *Milbauer I*, that the Fund failed to comply with section 3716, subdivision (d)(4), we conclude that the new procedures violate sections 3716, 5502, 5307 and the APA. The Fund may not be joined in any proceedings unless a legal person or entity has been identified as the illegally uninsured employer in the application and special notice of lawsuit, and said employer has been served with the application and special notice of lawsuit

---

[19] A petition for writ of review must be filed no later than 45 days from the WCAB's final order, decision or award. (§ 5950.) The time limit is *not* extended five days for mailing. (*Camper v. Workers' Comp. Appeals Bd.* (1992) 3 Cal.4th 679 [12 Cal.Rptr.2d 101, 836 P.2d 888].)

[20] The WCAB cites Government Code section 11425.60, subdivision (b), which in part provides: "An agency may designate as a precedent decision a decision or part of a decision that contains a significant legal or policy determination of general application that is likely to recur. Designation of a decision or part of a decision as a precedent decision is not rulemaking and need not be done under Chapter 3.5 (commencing with Section 11340)."

in the manner provided for service of a summons in the Code of Civil Procedure. The Code of Civil Procedure includes procedures for service and default or default judgment, even when the true identity of the defendant is unknown. In regards to the APA and section 5307, the procedures announced in *Milbauer I* are new, general, and interpret and specifically implement section 3716, and are more like regulations than precedent which contain general legal or policy determinations that are likely to recur. Because we conclude that the new procedures violate the Labor Code and APA, we need not decide whether the WCAB determined that section 5813 extends to the Fund. Accordingly, the new procedures decided in *Milbauer I* and the decision in *Milbauer II* are annulled, and the matter is remanded for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

As previously stated, Daniel Milbauer sustained various injuries in a traffic accident on October 17, 1994, while performing his duties as a messenger and courier. In August of 1995, Milbauer, through counsel, served Erez Boostan as an individual and substantial shareholder of American Runner Attorney Service & Courier with the application and special notice of lawsuit. On or about January 25, 1996, Michael Schiffman, M.D., performed an agreed medical evaluation on behalf of Milbauer and the Fund, and recommended further treatment, including right knee surgery.

At a mandatory settlement conference on October 17, 1996, counsel for the Fund completed an order joining American Runner Messenger Service, Inc., a corporation, formerly known as American Runner Attorney Service and Courier Network, Inc. The order also named Erez Boostan, as substantial shareholder and/or beneficial owner of said corporation. The order was signed by the WCJ. Milbauer amended the application and special notice of lawsuit accordingly, and then served the documents on Erez Boostan, the person authorized to accept service. The Fund was ordered joined by the WCJ on April 30, 1997, and counsel for the Fund agreed to serve the order.

On January 28, 1998, Milbauer obtained an order from the bankruptcy court allowing him to proceed in the workers' compensation case against American Runner Messenger Service, Inc. The debtor and Fund also appeared.

On or about July 2, 1999, Dr. Schiffman found Milbauer's condition to be permanent and stationary following surgery and treatment, and recommended work restrictions and future medical care.

On February 15, 2000, Milbauer and the Fund proceeded to trial on various issues. Milbauer testified regarding the industrial injury, treatment and disability. Milbauer also stated that he worked for American Runner, Inc., which might have been American Courier, Inc. In addition, he had pay stubs and a badge at home, and the badge may indicate a different name for the employer.

The WCJ found that there was no jurisdiction over American Runner Messenger Service, Inc. In the opinion on decision, the WCJ explained that employer identification was not raised as an issue for trial, but paycheck stubs, which were received after trial and submitted into evidence, indicated American Runner Attorney Service was the correct illegally uninsured employer. In addition, Milbauer testified that he was unsure of the employer's correct identity, and his badge, which was not submitted into evidence, apparently had a different name.

Milbauer timely petitioned the WCAB for reconsideration, and argued that the Fund stipulated to employment, and even provided benefits including surgery. The WCAB denied reconsideration.

Milbauer subsequently petitioned the WCJ for an order authorizing service by publication on Erez Boostan doing business as American Runner Attorney Service. Exhibits were attached to the petition, including an investigative report that there was no fictitious business filing for American Runner Attorney Service, and a corporate certification by the Secretary of State that American Runner Attorney Service, Inc., was incorporated on April 7, 1992, and suspended on January 4, 1999. The WCJ ordered publication, and service by publication was completed on or about March 28, 2002.

Milbauer and the Fund again proceeded to trial, and the Fund raised various issues including the illegally uninsured employer's identity. The matter was submitted on the record on February 25, 2003.

On May 8, 2003, the WCJ served a supplemental findings and award that Milbauer was injured while working for Erez Boostan, an individual and doing business as American Runner Attorney Service. The WCJ awarded temporary disability indemnity, 64 1/4 percent permanent disability indemnity and future medical care. In the opinion on decision, the WCJ explained that the decision was based on Milbauer's credible testimony, the paycheck stubs, the exhibits attached to the petition for service by publication and the medical evidence.

On June 3, 2003, the Fund petitioned the WCAB for reconsideration. The Fund claimed American Runner Attorney Service, Inc., is the correct illegally uninsured employer, as indicated by the paycheck stubs, fictitious business report and corporate certification by the Secretary of State submitted by Milbauer. The Fund contended that since the correct illegally uninsured employer was never served, there is no jurisdiction to award benefits under section 3716.

In the report on reconsideration, the WCJ pointed out that the Fund's petition is untimely.[21] In regards to the merits, the WCJ responded that the Fund provided no evidence of the alleged identity of the illegally uninsured employer.

Although the WCAB panel found the Fund's petition for reconsideration untimely, the panel granted reconsideration on its own motion under section 5900, subdivision (b).[22] Because of "the important legal issues presented, and in order to achieve uniformity of decisions in the future," the majority of the WCAB elected to decide *Milbauer I* in bank.[23]

---

[21] See section 5903, footnote 11, *ante.*

[22] Section 5900, subdivision (b) states: "At any time within 60 days after the filing of an order, decision, or award made by a workers' compensation judge and the accompanying report, the appeals board may, on its own motion, grant reconsideration."

The WCAB may grant reconsideration on its own motion, whether or not a timely petition for reconsideration is filed. (*Argonaut Ins. Exchange v. Industrial Acc. Com.* (1958) 49 Cal.2d 706 [321 P.2d 460] (*Argonaut Ins. Exchange*) [Industrial Accident Commission on own motion could reverse WCJ's approval of compromise and release settlement, even though petition for reconsideration not filed]; *United States Pipe & Foundry Co. v. Industrial Acc. Com.* (1962) 201 Cal.App.2d 545 [20 Cal.Rptr. 395] [no jurisdiction where employee requested reconsideration under Industrial Accident Commission's own motion, which was not granted until after 60-day period expired]; *CNA Ins. Co. v. Workers' Comp. Appeals Bd.* (1993) 58 Cal.Comp.Cases 87 [WCAB dismissed untimely petition for reconsideration and timely granted reconsideration on own motion].) Although the WCAB may not need good cause to grant reconsideration on its own motion (*Argonaut Ins. Exchange,* at p. 711), the WCAB in this case found the jurisdictional issue raised by the Fund to be sufficient reason. (See *Redner v. Workmen's Comp. Appeals Bd.* (1971) 5 Cal.3d 83, 92 [95 Cal.Rptr. 447, 485 P.2d 799], citing *Michon v. Workmen's Comp. Appeals Bd.* (1971) 15 Cal.App.3d 917, 924–925 [93 Cal.Rptr. 476] [WCAB's grant of reconsideration on own motion must be based on grounds stated in § 5903]; *Carreiro v. Dixie Yarns/Candlewick* (1979) 44 Cal.Comp.Cases 1035 [petition filed but not properly processed or forwarded is reason for WCAB to grant reconsideration on own motion].) Irregularity which deprives reconsideration under the statutory scheme denies due process (*Shipley v. Workers' Comp. Appeals Bd.* (1992) 7 Cal.App.4th 1104, 1108 [9 Cal.Rptr.2d 345]), and reconsideration by the WCAB on its own motion is part of the statutory scheme.

[23] Section 115 states: "Actions of the appeals board shall be taken by decision of a majority of the appeals board except as otherwise expressly provided. [¶] The chairman shall assign pending cases in which reconsideration is sought to any three members thereof for hearing, consideration and decision. Assignments by the chairman of members to such cases shall be rotated on a case-by-case basis with the composition of the members so assigned being varied and changed to assure that there shall never be a fixed and continued composition of members.

In *Milbauer I*, the WCAB found the paycheck stubs to be substantial evidence which supported the WCJ's finding that American Runner Attorney Service is the illegally uninsured employer. The WCAB also concluded the Fund's argument, that similarly named American Runner Attorney Service, Inc., existed at the time of injury, is not evidence of employment. The WCAB affirmed the supplemental findings and award.

The WCAB explicated further that the record also revealed the Fund did little or nothing to assist in properly identifying the illegally uninsured employer for over eight years of litigation, despite the duty to do so under section 3716, subdivision (d)(4) and *Yant v. Snyder & Dickenson* (1982) 47 Cal.Comp.Cases 254 (*Yant*).[24] Instead, the Fund challenged the WCJ's identification of the illegally uninsured employer in an untimely petition for reconsideration. In contrast, Milbauer (through counsel) diligently served documents and amendments, investigated the employer and moved the bankruptcy court for relief from automatic stay. Moreover, the Fund failed to provide benefits contrary to section 3716, subdivision (b), *Yant, DuBois,* and *Aubry v. Workers' Comp. Appeals Bd.* (1997) 56 Cal.App.4th 1032 [65 Cal.Rptr.2d 856] (*Aubry*) (claim form and not application for adjudication of claim required to be served on illegally uninsured employer for 1992 injury).

In order to alleviate such conduct by the Fund and promote early and active participation in properly identifying the illegally uninsured employer, the WCAB in bank in *Milbauer I* decided to "adopt" and "announce" certain "procedures." After an application is filed and the represented injured worker makes a good faith effort to correctly identify the illegally uninsured employer, including contacting the Fund, the Fund may be ordered to provisionally appear at a priority conference under section 5502, subdivision (c) and

Any such case assigned to any three members in which the finding, order, decision or award is made and filed by any two or more of such members shall be the action of the appeals board unless reconsideration is had in accordance with the provisions of Article I (commencing with Section 5900), Chapter 7, Part 4, Division 4 of this code. Any case assigned to three members shall be heard and decided only by them, unless the matter has been reassigned by the chairman on a majority vote of the appeals board to the appeals board as a whole in order to achieve uniformity of decision, or in cases presenting novel issues."

[24] In *Yant, supra,* 47 Cal.Comp.Cases 254, the WCAB in bank decided that correct identification of the employer is needed for proper service under section 3710 et seq., which could be accomplished in the manner provided by Code of Civil Procedure section 415.10 et seq. as authorized by section 5316 (see fn. 37, *post*) and WCAB rules. *Yant* explains that suit against a party by fictitious name and default and default judgment are authorized under Code of Civil Procedure section 474 (see fn. 38, *post*). *Yant* also gives examples of how employers should be named depending on the type of legal entity involved. Although proper naming of the employer and service is basically the responsibility of the injured worker, the WCAB in *Yant* reasoned, counsel for the Fund as an officer of the court should assist and raise the issue of employer identification prior to hearing, in order not to waste the court's time and so that compensation can be paid promptly as intended by the Legislature.

California Code of Regulations, title 8, section 10555.[25] If the illegally uninsured employer's identity is disputed, a discovery plan is provided by the injured worker and the Fund, which is monitored by the WCJ at periodic status conferences for six months. If the issue remains unresolved, the WCJ can decide the illegally uninsured employer's identity on the record or after trial. Once any appeals are exhausted, the application and special notice of lawsuit can be served on the illegally uninsured employer and the Fund may be formally joined.

Finally, the WCAB found the Fund's behavior so dilatory and inconsistent with its statutory obligations, that imposition of sanctions and attorney fees against the Fund and its counsel under section 5813 were seriously considered.[26] However, the WCAB decided to only warn the Fund of possible future sanctions and attorney fees since the new procedures were being announced in *Milbauer I*.

The Fund petitioned the WCAB for reconsideration a second time. The Fund indicated it is not challenging substantial evidence exists that Erez Boostan, doing business as American Runner Attorney Service, is the illegally uninsured employer. However, the Fund contended it is newly aggrieved by the new procedures announced by *Milbauer I*, since these issues were not raised for reconsideration and there was no notice or opportunity to be heard. Had there been notice and the opportunity to be heard, the Fund would have submitted the exhibits attached to the petition, which the Fund requested augment the record. The exhibits establish the Fund's efforts in providing employer information and benefits, and include written authorization for right

---

[25] Title 8, section 10555 of the California Code of Regulations provides: "A priority conference will be set upon the filing of a Declaration of Readiness requesting a priority conference that shows that the applicant is represented by an attorney and that the issues in dispute include employment and/or injury arising out of and in the course of employment. Upon a showing of good cause, the workers' compensation judge may continue the matter to a status conference. At each priority or status conference, the parties shall be prepared to set the matter for trial or to provide a plan to complete discovery. To the extent possible, all priority and status conferences in a case shall be conducted by the same workers' compensation judge. When discovery is complete, or when the workers' compensation judge determines that the parties have had sufficient time to complete reasonable discovery, the case shall be set for trial as expeditiously as possible."

In cases where the injured worker is unrepresented, the WCAB indicated the Fund could be ordered to appear at a status conference under California Code of Regulations, title 8, section 10301, subdivision (s), which defines status conference as "a proceeding set for the purpose of ascertaining if there are genuine disputes requiring resolution by the Workers' Compensation Appeals Board, of providing assistance to the parties in resolving disputes, of narrowing the issues, and of facilitating preparation and trial if a trial is necessary. A status conference includes a lien conference."

[26] Although the WCAB acknowledged that the Fund is not liable for section 5814 penalties under section 3716.2 and *DuBois*, the WCAB indicated that there is no statutory provision which insulates the Fund from sanctions and attorney fees under section 5813.

knee surgery and temporary disability indemnity pursuant to Dr. Schiffman's recommendations, requests for employer information from various governmental agencies and a brief filed in the bankruptcy court supporting Milbauer's motion for relief from stay. Thus, the WCAB in *Milbauer I* mischaracterized the Fund's conduct and wrongly assumed the new procedures were warranted.

The Fund also contended that the new procedures are void under the APA and *Tidewater Marine*, because the procedures are general, and implement and interpret section 3716. Thus, publication and public comment is required. Moreover, the WCAB's creation of provisional joinder conflicts with the Legislature's jurisdictional requirements expressed in sections 3716 and 5502, and the employer's due process rights according to *Arias v. Workers' Comp. Appeals Bd.* (1983) 146 Cal.App.3d 813 [194 Cal.Rptr. 640] (uninsured employer called as witness has due process right to notice of being potential defendant and to present evidence and cross-examine witnesses). The new procedures in *Milbauer I* also require Fund personnel and resources that are needed to obtain compliance with workers' compensation insurance or reimbursement for benefits paid. Finally, the WCAB should not have prejudged on its own motion that the Fund may be subject to sanctions and attorney fees under section 5813, considering the true facts, section 3716.2 and *DuBois*.

In *Milbauer II*, the WCAB in bank dismissed the Fund's petition for reconsideration. The WCAB concluded that the new procedures involve procedural and not substantive rights or liabilities, which does not involve a final order that is subject to appeal. In addition, the Fund was not newly aggrieved as required for reconsideration under sections 5900 and 5903, since the identity of the illegally uninsured employer is not disputed and the new procedures apply only to future cases. The WCAB also denied the Fund's request to augment the evidentiary record.

The Fund petitions for writ of review and contends that *Milbauer I* is a final order since the WCAB intended uniformity and stare decisis while deciding important legal issues such as jurisdiction in bank. The Fund also argues that it is aggrieved under section 5900 by *Milbauer I* because the new procedures require immediate litigation statewide, despite the lack of jurisdiction and staffing, and under the threat of sanctions. The Fund is particularly aggrieved by *Milbauer I* without prior notice of the new procedures and the opportunity to present exhibits which show the Fund's statutory compliance.

The Fund further contends that the WCAB in *Milbauer I* impermissibly legislated provisional joinder of the Fund at priority conferences, which conflicts with the express jurisdictional requirements of sections 3716 and

5502, and the employer's due process rights under *Katzin v. Workers' Comp. Appeals Bd.* (1992) 5 Cal.App.4th 703, 710–712 [7 Cal.Rptr.2d 66] (*Katzin*) (illegally uninsured employer has due process right to notice of medical evidence and proceedings). Without actual jurisdiction, the Director of Industrial Relations is impeded in regulating illegally uninsured employers and the Fund's limited resources have to be reallocated. Moreover, the WCAB in *Milbauer I* admitted the new procedures apply generally and are intended to implement section 3716, which meets the test of *Tidewater Marine* and thus the APA applies. Under the applicable provisions of the APA and section 5307, the WCAB is required to publish proposed regulations and conduct public hearings. Finally, the WCAB has already decided that the Fund is subject to sanctions under section 5813, which must be reversed considering no jurisdiction or opportunity to be heard, section 3716.2, and *DuBois*.

The WCAB answers that the Fund's petition for writ of review should be dismissed. Since the Fund's petition for reconsideration of *Milbauer I* is limited to the new procedures, substantial rights or liabilities, or a final appealable order as required under *Safeway Stores* and *Maranian*, are not involved. *Milbauer II* is also purely procedural. Even if *Milbauer I* is considered a final appealable decision, the WCAB argues further, the petition for writ of review was not timely filed within 45 days under section 5950. Moreover, the new procedures pertain to future cases, which can be appealed, and thus the Fund is not newly aggrieved by *Milbauer I* as required for reconsideration under sections 5900 and 5903. No authority is cited by the Fund for treating in bank decisions differently.

In regards to the merits, the WCAB contends that it has judicial powers under sections 115 and 133,[27] which includes controlling court proceedings to enable the orderly administration of justice. Consequently, numerous in bank decisions such as *Yant* have adopted and announced practice and procedure. Such precedential decisions are exceptions to the rulemaking requirements of section 5307 under section 5708,[28] and the APA under Government Code section 11425.60, subdivision (b).

---

[27] Section 133 states: "The Division of Workers' Compensation, including the administrative director, the court administrator, and the appeals board, shall have power and jurisdiction to do all things necessary or convenient in the exercise of any power or jurisdiction conferred upon it under this code."

[28] Section 5708 states: "All hearings and investigations before the appeals board or a workers' compensation judge are governed by this division and by the rules of practice and procedures adopted by the appeals board. In the conduct thereof they shall not be bound by the common law or statutory rules of evidence and procedure, but may make inquiry in the manner, through oral testimony and records, which is best calculated to ascertain the substantial rights of the parties and carry out justly the spirit and provisions of this division. All oral testimony, objections, and rulings shall be taken down in shorthand by a competent phonographic reporter."

The WCAB also argues that the Fund's allegation of improper joinder and hardship is without merit. *Milbauer I* does not replace formal joinder of the Fund or liability following proper service of the illegally uninsured employer. *Milbauer I* provides for provisional joinder of the Fund, in order to facilitate benefits and employer information as required under section 3716, subdivision (d)(4) and *Yant*. However, the record establishes that the Fund failed these duties for over eight years,[29] while Milbauer served documents and amended documents, investigated the employer and obtained relief from bankruptcy stay. Even if the Fund's nonadmitted exhibits are considered, the WCAB asserts further, the Fund's conduct described by *Milbauer I* is a familiar pattern which is also indicated by *Yant*.

The WCAB explains further that the Fund has routine access to various databases, and its early participation will help all parties, especially unrepresented employees. *Milbauer I* also provides safeguards, such as requiring the employee's good faith effort to identify the employer, including contacting the Fund. The WCJ then has discretion regarding the next step,[30] which the Fund may appeal. In regards to the threat of sanctions under section 5813, the WCAB claims that only a warning was given in dicta, and section 3716.2 and *DuBois* address penalties under section 5814, which are different than sanctions.

The Fund replies that prior to proper joinder under section 3716 and *Yant*, providing employer information is voluntary and cannot be ordered by the WCAB. In addition, the procedures announced by *Milbauer I* are new and general and not precedent, even if characterized as precedent by an in bank decision. In contrast, *Yant* applied existing statutes to the parties and did not create future rules. Moreover, the WCAB's powers are judicial and not legislative, and are limited by the Labor Code and Government Code. Extensive litigation statewide will be required if the new procedures are allowed to stand. Finally, the Fund denies the conduct described by *Milbauer I* is a pattern, which shows bias by the WCAB. The Fund actually provided early employer information, although it was mistaken.

---

[29] The WCAB notes that the Fund's request to augment the record with the exhibits attached to the second petition for reconsideration was denied, and the exhibits should not be considered. The WCAB cites California Code of Regulations, title 8, section 10750 which states: "The record of proceedings consists of: the pleadings, declarations of readiness to proceed, minutes of hearing and summary of evidence, transcripts, if prepared and filed, proofs of service, evidence received in the course of a hearing, exhibits marked but not received in evidence, notices, petitions, briefs, findings, orders, decisions and awards. Documents that are in the Workers' Compensation Appeals Board file but have not been received in evidence are not part of the evidentiary record."

[30] The WCAB concedes that a priority conference may not be ordered until formal joinder of the Fund under section 5502, subdivision (f). However, the WCAB claims that other conferences such as status conferences are not precluded.

## DISCUSSION

### I. Standard of Review

#### A. *Factual Findings*

■ A decision based on factual findings which are supported by substantial evidence should be affirmed by the reviewing court. (*LeVesque v. Workmen's Comp. Appeals Bd.* (1970) 1 Cal.3d 627, 635–637 [83 Cal.Rptr. 208, 463 P.2d 432] (*LeVesque*); *Western Growers Ins. Co. v. Workers' Comp. Appeals Bd.* (1993) 16 Cal.App.4th 227, 233 [20 Cal.Rptr.2d 26] (*Western Growers*).) However, an appellate court is not bound to accept factual findings that are unreasonable, illogical, improbable, or inequitable when viewed in light of the entire record and the overall statutory scheme. (*Western Growers, supra,* at p. 233; *Bracken v. Workers' Comp. Appeals Bd.* (1989) 214 Cal.App.3d 246, 254 [262 Cal.Rptr. 537].)

#### B. *Interpreting and Applying Statutes*

■ Interpreting or applying statutes to the facts is decided de novo by the appellate court, even though the WCAB's construction is entitled to great weight unless clearly erroneous. (*Boehm & Associates v. Workers' Comp. Appeals Bd.* (1999) 76 Cal.App.4th 513, 516 [90 Cal.Rptr.2d 486] (*Boehm & Associates*); *Williams v. Workers' Comp. Appeals Bd.* (1998) 74 Cal.App.4th 1260, 1264 [88 Cal.Rptr.2d 798] (*Williams*).) When interpreting or applying statutes to the facts, the Legislature's intent should be determined and given effect. (*DuBois, supra,* 5 Cal.4th at pp. 387–388; *Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224] (*Moyer*).) The intent of the Legislature is generally determined from the plain or ordinary meaning of the statutory language, unless the language or intent is uncertain. (*DuBois, supra,* at pp. 387–388; *Moyer, supra,* at p. 230.) Interpreting or applying statutes to the facts should be consistent with the purpose of the statute and the statutory scheme as a whole. (*DuBois, supra,* at p. 388; *Moyer, supra,* at p. 230.)

### II. *Milbauer I* Is a Final Appealable Decision

The Fund contends that *Milbauer I* is a final appealable decision because the WCAB decided the new procedures in bank to achieve uniformity and stare decisis regarding important legal issues such as jurisdiction. The WCAB alleges that *Milbauer I* decided only procedural matters, which does not involve substantive rights or liabilities, or a final appealable decision under *Safeway Stores* and *Maranian*.

■ Final appealable decisions include "threshold" issues that are basic to establishing liability for workers' compensation benefits, whether or not all issues are resolved or there is an ultimate decision on the right to benefits. (*Safeway Stores, supra,* 104 Cal.App.3d at pp. 533–534; *Maranian, supra,* 81 Cal.App.4th at p. 1075.) Jurisdiction is a "threshold" issue which is basic to establishing the Fund's substantive rights and liabilities versus the employee and employer. The WCAB decided in *Milbauer I* that there can be provisional jurisdiction over the Fund and adjudication of the identity of the illegally uninsured employer, before compliance with the jurisdictional and liability requirements under sections 3716, subdivision (d) and 5502, subdivision (f).

*Milbauer I* is also final within the meaning of sections 5900 and 5903. The WCAB in bank decided that existing law authorizes the new procedures, which are effective immediately. In contrast, the WCAB in *Milbauer I* merely warned that sanctions and attorney fees under section 5813 could be considered for similar future conduct by the Fund.

### III.   The Fund Is Newly Aggrieved

The Fund argues that it is newly aggrieved by *Milbauer I* because immediate litigation over jurisdiction, sanctions and staffing is required statewide, and the in bank decision is being followed by WCJ's. The WCAB maintains that the Fund is not aggrieved within the meaning of sections 5900 and 5903, since the new procedures are prospective and can be fully challenged in future cases.

■ We conclude that the Fund is newly aggrieved by *Milbauer I* within the meaning of sections 5900 and 5903. The new procedures directly affect the Fund's substantive rights and liabilities, are effective immediately and cannot be meaningfully challenged in future cases having been decided by the WCAB in bank.[31] Since the basis for the new procedures were not raised by the parties and the new procedures were decided by *Milbauer I* for the first time without notice, the Fund's second petition for reconsideration is not repetitive and properly requests "reconsideration of a matter which has been theretofore considered on only one occasion." (*Goodrich v. Ind. Acc. Com.* (1943) 22 Cal.2d 604, 612 [140 P.2d 405] (*Goodrich*) [Commission has jurisdiction to grant rehearing after granting petition to reopen based on new evidence, even though prior decision is affirmed].)[32]

---

[31] See footnote 12, *ante.*

[32] Generally, the same party can petition for reconsideration a second time where new evidence is considered after the first petition for reconsideration, even though the same decision is reached. (*Pac. Employers Ins. Co. v. Ind. Acc. Com.* (1956) 139 Cal.App.2d 22 [292 P.2d 903].) Reconsideration after new evidence is actually reconsideration of a matter which has been considered only once. (*Goodrich, supra,* 22 Cal.2d at p. 612; *Zozaya v.*

*The Petition for Writ of Review Is Timely*

■ If reconsideration is granted and a party is newly aggrieved by the resulting decision within the meaning of sections 5900 and 5903, the party may either petition for reconsideration or writ of review. (*Goodrich, supra,* 22 Cal.2d at pp. 611–613; *Dalsheim v. Industrial Acc. Com.* (1932) 215 Cal. 107, 110–111 [8 P.2d 840].) In this case, the Fund was newly aggrieved by the modified decision in *Milbauer I,* and properly petitioned the WCAB for reconsideration a second time. Although the WCAB dismissed the second petition for reconsideration in *Milbauer II,* the question is whether the WCAB had jurisdiction to address the merits. (*Goodrich, supra,* at p. 612 [WCAB may not deprive itself of jurisdiction by denying reconsideration on that basis, after granting petition to reopen and considering new evidence and reaching same decision].) Since we conclude that the WCAB had jurisdiction under sections 5900 and 5903 in *Milbauer II,* the Fund properly and timely petitioned for writ of review under section 5950.

## IV.   Due Process Was Violated

■ The WCAB in *Milbauer I* violated due process. Due process requires notice and a meaningful opportunity to present evidence in regards to the issues. (*Katzin, supra,* 5 Cal.App.4th at pp. 711–712; *Fidelity & Cas. Co. of New York v. Workers' Comp. Appeals Bd.* (1980) 103 Cal.App.3d 1001, 1015 [163 Cal.Rptr. 339]; *Fremont Indemnity Co. v. Workers' Comp. Appeals Bd.* (1984) 153 Cal.App.3d 965, 971 [200 Cal.Rptr. 762].) The Fund was not provided notice that its conduct under section 3716, subdivisions (b) and (d)(4) was in issue until *Milbauer I* was decided. In addition, a decision based on different legal theories or issues than presented by the parties, without affording a meaningful opportunity to be heard or present evidence, violates due process. (*Gangwish v. Workers' Comp. Appeals Bd.* (2001) 89 Cal.App.4th 1284, 1295 [108 Cal.Rptr.2d 1]; *Rucker v. Workers' Comp. Appeals Bd.* (2000) 82 Cal.App.4th 151, 157 [97 Cal.Rptr.2d 852].)

In petitioning for reconsideration the second time, the Fund included exhibits and requested augmentation of the record in attempting to show compliance with section 3716, subdivisions (b) and (d)(4). The WCAB

---

*Workmen's Comp. Appeals Bd.* (1972) 27 Cal.App.3d 464, 470 [103 Cal.Rptr. 793] [party's second petition for reconsideration properly based on evidence different than record in granting same party's first petition for reconsideration].) Reconsideration of liability that changed following reconsideration is also reconsideration of a matter which has only been considered on one occasion. (*Argonaut Ins. Co. v. Industrial Acc. Com.* (1961) 189 Cal.App.2d 23, 27 [10 Cal.Rptr. 745] [new liability after reconsideration by Commission on own motion subject to reconsideration by liable party].)

denied the request, and maintains the exhibits are not part of the record. The WCAB argues that the Fund had more than enough opportunity to submit the proposed exhibits as evidence. While the Fund had plenty of opportunity to submit evidence of the illegally uninsured employer's correct identity, the Fund's conduct in identifying the employer and providing benefits had not been in issue until *Milbauer I* was decided.

## V.   The New Procedures Violate Sections 3716 and 5502

The Fund contends that the WCAB in *Milbauer I* impermissibly legislated provisional joinder at priority conferences contrary to the express jurisdictional requirements of sections 3716 and 5502. Without proper jurisdiction, the Fund argues it is inhibited or precluded from fulfilling its statutory obligations under section 3710 et seq. The WCAB responds that the new procedures are authorized under section 3716, subdivision (d)(4), *Yant,* and the WCAB's general court powers. Moreover, formal joinder under section 3716, subdivision (d) is not replaced but follows application of the new procedures.

### A.   *Section 3716*

■   The WCAB's jurisdiction over the Fund and the Fund's liability for compensation is specifically addressed in section 3716, subdivision (d). The plain language of the statute states that the Fund cannot be joined in any proceedings and is not liable for compensation, unless the employer alleged to be illegally uninsured has made a general appearance or has been served with the application and special notice of lawsuit. Thus, the Fund may not be joined in any WCAB proceeding, provisional or otherwise, unless the statutory prerequisites are met. (*DuBois, supra,* 5 Cal.4th at pp. 387–388; *Moyer, supra,* 10 Cal.3d at p. 230.) Filing an application followed by a good faith effort to identify the illegally uninsured employer are not the statutory requirements. Moreover, section 3716, subdivision (d)(4) is part of section 3716, subdivision (d), and there is nothing in the statutory language indicating the Fund's duty to furnish employer information creates an exception to jurisdiction under the statutory scheme. (*DuBois, supra,* at p. 388; *Moyer, supra,* at p. 230.)

■   While the WCAB is empowered to enact rules or procedures under the proper circumstances, it may not change legislation that is within the plenary power of the Legislature under article XIV, section 4 of the California Constitution. (*Boehm & Associates, supra,* 76 Cal.App.4th at p. 516.) The WCAB also may not exceed its authority by creating exceptions to statutory requirements, even for a legitimate purpose. (*Williams, supra,* 74 Cal.App.4th 1260 [reversal of WCAB ruling that paying benefits for two years in good

faith before denying claim excused employer's failure to investigate and deny claim within 90-day period as required by § 5402].) Therefore, the new procedures announced by the WCAB in *Milbauer I* violate section 3716, subdivision (d).

### B. *Section 5502*

■ Similarly, section 5502, subdivision (f) expressly states that section 5502, which authorizes priority conferences, does not apply unless the proof of service as specified in section 3716, subdivision (d)(1) has been filed. Section 3716, subdivision (d)(1) requires service of the application and special notice of lawsuit on the employer alleged to be illegally uninsured in the manner provided for service of summons in the Code of Civil Procedure. While the WCAB concedes in its answer that priority conferences may not be ordered until proper joinder under section 3716, subdivision (d), the WCAB contends that other conferences such as status conferences under California Code of Regulations, title 8, section 10301 are not precluded. However, *Milbauer I* specifies priority conferences under section 5502. Moreover, the lack of jurisdiction under section 3716, subdivision (d) precludes any WCAB proceeding, which includes status conferences. Thus, the new procedures announced by the WCAB in *Milbauer I* violate section 5502.

### VI. The New Procedures Violate the APA and Section 5307

The Fund alleges that the new procedures announced in *Milbauer I* apply generally and are intended to interpret and implement section 3716, which meets the test of *Tidewater Marine* and requires publication and public hearing under the APA and section 5307. The WCAB answers that *Milbauer I* is a precedent decision, which is an exception to the rulemaking requirements of the APA and section 5307 under Government Code section 11425.60, subdivision (b) and Labor Code section 5708. The Fund replies that the WCAB may not avoid statutory rulemaking requirements by characterizing new procedures as precedent in an in bank decision.

### A. *The Statutory Scheme*

■ The Legislature expressly stated that the APA is enacted to clarify and reduce the amount of administrative regulations, which saves time and money and promotes business and social goals. (Gov. Code, §§ 11340, 11340.1.) The APA provides procedures for state agencies to adopt regulations. (*Tidewater Marine, supra,* 14 Cal.4th at p. 568.) The procedures include public notice of the proposed regulation, an opportunity for comment by interested parties, and review by the Office of Administrative Law. (*Ibid.*)

Under Government Code section 11351,[33] the APA is expressly applicable to the WCAB, although the statute provides certain provisions are excluded. For example, article 5, commencing with Government Code section 11346, which pertains to public notice and comment, is not applicable to the WCAB.[34] However, public notice and hearings in regards to WCAB rulemaking is addressed by sections 5307 and 5307.4.[35] This interrelationship between the APA and the Labor Code[36] is similar to the statutory scheme which involved the Industrial Welfare Commission as addressed by *Tidewater Marine*, except that section 1185 expressly exempted the Industrial Welfare Commission from the APA in order to avoid redundancy and confusion. (*Tidewater Marine, supra,* 14 Cal.4th at p. 569.) .

Government Code section 11425.60, subdivision (b) is not excluded by Government Code section 11353 and is applicable to the WCAB, but the

---

[33] Government Code section 11351 states as follows: "(a) Except as provided in subdivision (b), Article 5 (commencing with Section 11346), Article 6 (commencing with Section 11349), Article 7 (commencing with Section 11349.7), and Article 8 (commencing with Section 11350) shall not apply to the Public Utilities Commission or the Workers' Compensation Appeals Board, and Article 3 (commencing with Section 11343) and Article 4 (commencing with Section 11344) shall apply only to the rules of procedure of these state agencies. [¶] (b) The Public Utilities Commission and the Workers' Compensation Appeals Board shall comply with paragraph (5) of subdivision (a) of Section 11346.4 with respect to regulations that are required to be filed with the Secretary of State pursuant to Section 11343. [¶] (c) Article 8 (commencing with Section 11350) shall not apply to the Division of Workers' Compensation."

[34] Government Code section 11346.4, subdivision (a)(5), which requires publication in the California Regulatory Notice Register, is expressly applicable pursuant to Government Code section 11351, subdivision (b).

[35] Section 5307.4 provides: "(a) Public hearings required under Section 5307 and 5307.3 shall be subject to the provisions of this section except to the extent that there is involved a matter relating to the management, or to personnel, or to public property, loans, grants, benefits, or to contracts, of the appeals board or the administrative director. [¶] (b) Notice of the rule of regulation proposed to be adopted, amended, or rescinded, shall be given to such business and labor organizations and firms or individuals who have requested notice thereof. The notice shall include all the following: [¶] (1) A statement of the time, place, and nature of the public hearings. [¶] (2) Reference to the legal authority under which the rule is proposed. [¶] (3) Either the terms or substance of the proposed rule, or a description of the subjects and the issues involved. [¶] (c) Except where the proposed rule or regulation has a significant impact on the public, this section shall not apply to interpretive rules, general statements of policy, or rules of agency organization. [¶] (d) After notice required by this section, the appeals board or the administrative director shall give interested persons the opportunity to participate in the rulemaking through submission of written data, views, or arguments, with opportunity for oral presentation. If, after consideration of the relevant matter presented, the appeals board or the administrative director adopts a rule, it or he shall publish a concise, general statement of reasons for the adoption of the rule. The rule and statement of reasons shall be given to the same individuals and organizations who have requested notice of hearings. [¶] (e) The notice required under this section shall be made not less than 30 days prior to the public hearing date."

[36] See *DuBois, supra,* 5 Cal.4th at page 388; *Moyer, supra,* 10 Cal.3d at page 230.

statute provides another exception to the rulemaking requirements of the APA. Government Code section 11340 et seq. or the APA does not apply where a state agency designates as a precedent decision "a decision or part of a decision that contains a significant legal or policy determination of general application that is likely to recur." (Gov. Code, § 11425.60, subd. (b).)

In contrast, Government Code section 11342.600, which defines regulation, is part of article 2 and included in the provisions of the APA that apply to the WCAB. Government Code section 11342.600 provides: " 'Regulation' means every rule, regulation, order, or standard of general application or the amendment, supplement, or revision of any rule, regulation, order, or standard adopted by any state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure."

The issue then is whether the new procedures in *Milbauer I* are part of a precedent decision and excluded from the APA under Government Code section 11425.60, subdivision (b), or are regulations and subject to the APA under Government Code section 11342.600. We conclude that the new procedures are primarily regulations within the meaning of Government Code section 11342.600, and thus are subject to the applicable provisions of the APA.

### B. *The New Procedures Are Regulations Under the APA*

While the new procedures conceivably could be characterized as a "significant legal or policy determination of general application that is likely to recur," the WCAB in *Milbauer I* stated throughout the decision that the new procedures were being adopted and announced to implement the WCAB's interpretation of section 3716, subdivisions (b) and (d) and *Yant* in future cases. In addition, sections 3716 and 5502 are made more specific by the detailed procedures. For example, the new procedures address how and when the Fund shall furnish information regarding the identity of the illegally uninsured employer under section 3716, subdivision (d)(4). Thus, the definition of regulation under Government Code section 11342.600 is more applicable to the new procedures adopted and announced by *Milbauer I* than the definition of precedent decision under Government Code section 11425.60, subdivision (b).

Although *Tidewater Marine* issued before the operative date of Government Code section 11425.60, the decision is still instructive. The Supreme Court in *Tidewater Marine* applied a similar test to determine whether the APA applied, based on essentially the same definition of regulation under former Government Code section 11342, subdivision (b). The Supreme Court first considered whether the rule applied generally, and second, whether the

rule is intended to " 'implement, interpret, or make specific the law enforced or administered by [the agency], or . . . govern [the agency's] procedure.' " (*Tidewater Marine, supra,* 14 Cal.4th at p. 571.) The Supreme Court also addressed whether a precedent decision was involved, since "interpretations that arise in the course of case-specific adjudication are not regulations . . . ." (*Ibid.*)

The new procedures in *Milbauer I* are much more extensive than general legal conclusions or policies produced after interpretation of applicable statutes or law in the context of a specific case. *Milbauer I* adopted and announced a whole body of entirely new procedures, after the WCAB in bank concluded that the Fund breached its duties under section 3716, subdivisions (b) and (d).

*Yant* is a very different in bank decision. In *Yant,* the WCAB summarized the applicable law for service on parties, which included section 5316,[37] and concluded that jurisdiction under section 3710 et seq. could be perfected by proper identification of the illegally uninsured employer and service on said employer in the manner required by the Code of Civil Procedure for a default or default judgment. *Yant* also pointed out that Code of Civil Procedure section 474 (see fn. 38, *post*) allows for adjudication against a fictitious or Doe party, and referred to an accepted workers' compensation publication for examples of how to name potential defendants. While *Yant* also acknowledged that challenging the illegally uninsured employer's identity for the first time on reconsideration is inconsistent with the Fund's role as intended by the Legislature, the WCAB in bank did not enact comprehensive new procedures but requested as a general policy early assistance from the Fund's counsel as an officer of the court.

### C. *The New Procedures Are Regulations Under Sections 5307 and 5307.4*

As we have pointed out, the WCAB stated in *Milbauer I* that new procedures are being adopted and announced by the decision. Adopting rules of procedures by the WCAB under the statutory scheme is normally addressed by the APA and section 5307. Section 5307, subdivision (a) states in

---

[37] Section 5316 provides: "Any notice, order, or decision required by this division to be served upon any person either before, during, or after the institution of any proceeding before the appeals board, may be served in the manner provided by Chapter 5, Title 14 of Part 2 of the Code of Civil Procedure, unless otherwise directed by the appeals board. In the latter event the document shall be served in accordance with the order or direction of the appeals board. The appeals board may, in the cases mentioned in the Code of Civil Procedure, order service to be made by publication of notice of time and place of hearing. Where service is ordered to be made by publication the date of the hearing may be fixed at more than 30 days from the date of filing the application."

relevant part: "[T]he appeals board may by an order signed by four members: [¶] (1) Adopt reasonable and proper rules of practice and procedure." Section 5307, subdivision (b) adds that, "No rule or regulation of the appeals board pursuant to this section shall be adopted, amended, or rescinded without public hearings." Public hearings are also addressed by section 5307.4. Since none of the exceptions to the requirements of public hearings in section 5307.4 have been argued by the WCAB, and do not appear to apply, the new procedures adopted and announced by *Milbauer I* violate sections 5307 and 5307.4.

### *Section 5708 does not apply*

The WCAB is apparently arguing that section 5708 excuses compliance with the rulemaking provisions of sections 5307 and 5307.4. No authority is provided for this interpretation. Instead, section 5708 is generally cited for the proposition that in conducting hearings and investigations, the WCAB is normally not bound by the Evidence Code or technical rules of pleading or procedure under the common law or the Code of Civil Procedure. (See *National Convenience Stores v. Workers' Comp. Appeals Bd.* (1981) 121 Cal.App.3d 420 [175 Cal.Rptr. 378].)

### VII. The Statutory Scheme Provides the Solution

The WCAB argues that the new procedures adopted and announced in *Milbauer I* are justified to alleviate dilatory conduct by the Fund in identifying illegally uninsured employers and providing compensation. The WCAB asserts further that the Fund's conduct in this case is a pattern as indicated by past experience and *Yant*. The Fund insists that employer information and benefits were provided in this case, and any shortcomings are not part of a pattern.

There is substantial evidence in the record to justify the WCAB's conclusion in this case and concern. (*LeVesque, supra,* 1 Cal.3d at pp. 635–637; *Western Growers, supra,* 16 Cal.App.4th at p. 233.) In completing an order of joinder, counsel for the Fund provided an incorrect identity of the illegally uninsured employer. The WCJ and Milbauer relied on the misinformation. During eight years of litigation, the Fund failed to sufficiently challenge the illegally uninsured employer's correct identity, until attempting to do so in the untimely petition for reconsideration based on evidence presented by Milbauer. On the other hand, Dr. Schiffman's reports and Milbauer's petition for reconsideration indicate the Fund provided benefits such as surgery, and the bankruptcy documents contained in the record show the Fund appeared and Milbauer was permitted to proceed.

Regardless of whether the Fund's conduct in this case is an aberration or typical, the statutory scheme and *Yant* already provide the legal means by which injured workers in Milbauer's situation can gain proper and early jurisdiction over the illegally uninsured employer and the Fund.

*Jurisdiction Under the Statutory Scheme*

Jurisdiction over the illegally uninsured employer and the Fund is attained if the employer makes a general appearance or is served with the properly completed application and special notice of lawsuit in the manner provided for service of summons in the Code of Civil Procedure. (§§ 3716, subd. (d), 5316; *Aubry, supra,* 56 Cal.App.4th at p. 1034.)

The application and special notice of lawsuit are preprinted forms with designated space to identify the parties. (§§ 3715, 3716, Code Civ. Proc., § 412.20.) The illegally uninsured employer should be identified in the application. (§ 3715, subd. (a), Code Civ. Proc., § 412.20; *Yant, supra,* 47 Cal.Comp.Cases 254.) The applicant is also required to "identify a legal person or entity as the employer named in the special notice of lawsuit." (§ 3716, subd. (d).) The requirements for proper identification of legal persons or entities can be found in Code of Civil Procedure section 367 et seq., Weil & Brown, California Practice Guide: Civil Procedure Before Trial (The Rutter Group 2004) paragraphs 6:48 to 6:97, pages 6-12 to 6-24, *Yant, supra,* 47 Cal.Comp.Cases 254, and 1 California Workers' Compensation Practice (Cont.Ed.Bar 4th ed. 2004), sections 13.27–13.37, 13.88–13.91, pages 888–903.

When the applicant is genuinely ignorant of the identity of the illegally uninsured employer, the legal person or entity identified in the application and special notice of lawsuit may include a fictitiously named or Doe party sufficient for entry of a default or default judgment. (Code Civ. Proc., § 474;[38] *Yant, supra,* 47 Cal.Comp.Cases 254.) The completed forms should

---

[38] Code of Civil Procedure section 474 states: "When the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint, or the affidavit if the action is commenced by affidavit, and such defendant may be designated in any pleading or proceeding by any name, and when his true name is discovered, the pleading or proceeding must be amended accordingly; provided, that no default or default judgment shall be entered against a defendant so designated, unless it appears that the copy of the summons or other process, or, if there be no summons or process, the copy of the first pleading or notice served upon such defendant bore on the face thereof a notice stating in substance: 'To the person served: You are hereby served in the within action (or proceedings) as (or on behalf of) the person sued under the fictitious name of (designating it).' The certificate or affidavit of service must state the fictitious name under which such defendant was served and the fact that notice of identity was given by endorsement upon the document served as required by this section. The foregoing requirements for entry of a default or default judgment shall be applicable only as to fictitious names

indicate to the person served that the person is being served as a fictitiously named or Doe defendant. (Code Civ. Proc., §§ 412.20, 474.) The special notice of lawsuit provides a specific section for the information.

If the true identity of the illegally uninsured employer is subsequently discovered, the application and special notice of lawsuit must be amended accordingly. (Code Civ. Proc., § 474; *Scandinavian Airlines v. Workers' Comp. Appeals Bd.* (1989) 54 Cal.Comp.Cases 457 [amendment to application correcting employer's identity relates back to original application].) Default judgment will be set aside if there is a failure to amend, but jurisdiction over the person served as a fictitious defendant and the default may still be valid. (*Jonson v. Weinstein* (1967) 249 Cal.App.2d 954 [58 Cal.Rptr. 32].)

In addition, the application and special notice of lawsuit must be served on the illegally uninsured employer in compliance with the Code of Civil Procedure. (§§ 3716, subd. (d), 5316.) Methods of proper service include personal service (Code Civ. Proc., § 415.10), substitute service (Code Civ. Proc., § 415.20), service by mail (Code Civ. Proc., § 415.30), service outside the state (Code Civ. Proc., § 415.40), and service by publication (Code Civ. Proc., § 415.50). (*Yant, supra,* 47 Cal.Comp.Cases 254.)

The proof of service of the application and special notice of lawsuit on the illegally uninsured employer must be filed with the WCAB. (§ 3716, subd. (d).) The proof of service should specify the time, place and manner of service pursuant to Code of Civil Procedure section 417.10 et seq. (*Yant, supra,* 47 Cal.Comp.Cases 254.) In the case of a Doe defendant, the proof of service should also state the name of the person served, the fictitious name under which such person was served (e.g., Doe), and that the required notice under Code of Civil Procedure sections 412.20 and 474 was given to the person served.

In this case, Milbauer was aware at the time of his injury that Boostan was operating under various business entities, as indicated by his testimony at trial. Milbauer could have easily added a fictitious or Doe defendant to the application and special notice of lawsuit, and served Boostan in the manner provided for service of summons under the Code of Civil Procedure. This would have provided jurisdiction over the illegally uninsured employer and the Fund early in the proceedings. The WCJ would then be authorized to order joinder of the Fund, and conduct further proceedings including priority

designated pursuant to this section and not in the event the plaintiff has sued the defendant by an erroneous name and shall not be applicable to entry of a default or default judgment based upon service, in the manner otherwise provided by law, of an amended pleading, process or notice designating defendant by his true name."

conferences under section 5502. Once Milbauer learned of the illegally uninsured employer's correct identity, the application and special notice of lawsuit would have to be amended accordingly, and served under the Code of Civil Procedure.

## VIII.  Section 5813

Because the new procedures under *Milbauer I* and the decision of *Milbauer II* are being annulled by our decision on other grounds, we need not address whether the WCAB determined sanctions and attorney fees under section 5813 may be imposed against the Fund.

## DISPOSITION

The new procedures in *Milbauer I* and the decision in *Milbauer II* are annulled. The matter is remanded for further proceedings consistent with this decision.

Boren, P. J., and Doi Todd, J., concurred.